**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3120
_____

WILLIAM J. COST; WILLIAM J. COST, JR.,
Appellants

v.

BOROUGH OF DICKSON CITY; MICHAEL RANAKOSKI; MICHAEL
MCMORROW
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Nos. 3-18-cv-01494, 3-18-cv-01510)
District Judge: Honorable Malachy E. Mannion
_____

Submitted under Third Circuit L.A.R. 34.1(a)
May 27, 2021
_____

Before: GREENAWAY, JR., SHWARTZ, <u>Circuit Judges</u>, and ROBRENO, <u>District
Judge</u>.*

(Filed: June 3, 2021)
_____

OPINION**
_____

---

* The Honorable Eduardo C. Robreno, United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.
** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Plaintiffs William Cost, Sr. and William Cost, Jr. brought claims under 42 U.S.C. § 1983 and Pennsylvania state law against Defendants Officer Michael Ranakoski, Officer Michael McMorrow, and the Borough of Dickson City arising from the forced entry into Plaintiffs' home following a neighbor's 911 call and Cost, Sr.'s subsequent arrest for disorderly conduct. Because exigent circumstances justified the officers' entry, probable cause supported Cost, Sr.'s arrest, and reasonable suspicion supported Cost, Jr.'s brief detention, we will affirm the District Court's order granting summary judgment for Defendants.

I

A

On the evening of September 3, 2016, Renee Giedieviells, who lived across the street from Plaintiffs, heard yelling from Plaintiffs' home. After hearing a woman yell "Help!", Ms. Giedieviells called 911 to report the situation and said that she believed children were inside.[1] App. 357. The Dickson City Police Department dispatched Ranakoski and McMorrow to Plaintiffs' home. When the officers arrived at the home, they alleged that they could hear yelling, including a woman screaming "stop" several times.[2] App. 201. The home became quiet when the officers approached the front door.

_____

[1] Michael Giedieviells provided an affidavit stating that he also heard a woman yelling "Help!" and "Stop it!" after his wife called 911. App. 368.

[2] The District Court determined that it was undisputed that the Officers heard a female voice scream "stop" when they arrived at the house. App. 28. In doing so, the District Court noted that Cost, Sr.'s wife's affidavit, in which she stated that she did not yell "stop" or "help" on that day, did not refute the Officers' testimony because the

2

The officers knocked and announced themselves at the front and side doors several times over the course of the next ten to fifteen minutes. Receiving no response, McMorrow contacted Police Chief Michael Resetar and obtained permission to force entry into Plaintiffs' home. The officers entered and found Plaintiffs at a table close to the door.

The officers handcuffed Plaintiffs and Ranakoski swept the home to check for any possible threats. Ranakoski found Cost, Sr.'s wife, Heather Rought, upstairs with two children and brought them downstairs. Rought told McMorrow that there was a loud argument between Cost, Sr. and their daughter regarding her cell phone.

Cost, Jr. provided his identification to Ranakoski, who then uncuffed him. Cost, Sr. refused to provide his name, so Ranakoski brought him to the Lackawanna County Processing Center for identification and issued him a citation for disorderly conduct pursuant to 18 Pa. Cons. Stat. § 5503(a)(4). The citation was ultimately dismissed because Ranakoski did not appear at the hearing.

---

parties agree the fight was between Cost, Sr. and his daughter, not his wife. App. 28. Further, the District Court also determined that Cost, Sr.'s testimony that he did not hear anyone yelling when the police arrived does not rebut the Officers' testimony because "Cost, Sr.'s testimony means only that he did not hear the shouting from his own house—not that the shouting did not occur." App. 29. We need not decide whether the allegation that the Officers heard yelling upon arrival is a disputed fact because this fact is not material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Exigent circumstances existed regardless of whether the Officers heard yelling upon their arrival at the house.

3

B

Cost, Sr. and Cost, Jr. filed separate complaints against Defendants, alleging violations of the Fourth Amendment under 42 U.S.C. § 1983 and state law.[3] The District Court sua sponte consolidated the cases.[4]

Plaintiffs moved for summary judgment on their Fourth Amendment search and seizure claims and Defendants moved for summary judgment on all claims. In connection with their summary judgment motion, Defendants attached affidavits from Renee and Michael Giedieviells, which Plaintiffs moved to strike under Rule 37 because Defendants produced them after the close of discovery and did not identify the Giedieviells as witnesses during discovery. The District Court "decline[d] to strike the

---

[3] Cost, Sr. brought the following claims: (1) unlawful search and seizure in violation of the Fourth and Fourteenth Amendments against all Defendants; (2) excessive force in violation of the Fourth Amendment against all Defendants; (3) state law assault and battery against Ranakoski; (4) false arrest, false imprisonment, and malicious prosecution against all Defendants under both the Fourth Amendment and state law; and (5) Fourth Amendment failure to train and inadequate supervision against Dickson City. Cost, Jr.'s complaint contained the same causes of action, except it contained no malicious prosecution claims.

[4] The District Court did not abuse its discretion by consolidating the cases. Rule 42 provides that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a)(2). Rule 42 "confers upon a district court broad power, whether at the request of a party or upon its own initiative, to consolidate causes for trial as may facilitate the administration of justice." Ellerman Lines, Ltd. v. Atl. & Gulf Stevedores, Inc., 339 F.2d 673, 675 (3d Cir. 1964); see also Hall v. Hall, 138 S. Ct. 1118, 1131 (2018) ("District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases."). Plaintiffs' complaints involved common questions of law and fact and thus judicial economy favored consolidation. Moreover, Plaintiffs have not identified any prejudice resulting from consolidation other than a vague allegation of "factual spill-over" because Cost, Jr. "was not officially charged with disorderly conduct while Cost, Sr. was." Appellants' Br. at 23. This potential prejudice could be cured by a jury instruction. Accordingly, consolidation under Rule 42 was proper.

4

affidavits . . . for the reasons set forth in Plaintiffs' motion," App. 44, because (1) Plaintiffs were not surprised, since Cost, Sr.'s deposition testimony indicated he was aware of Ms. Giedieviells's identity; (2) there was no evidence of bad faith, since Defendants' counsel immediately informed Plaintiffs of the affidavits after they were procured; (3) the Giedieviellses' testimony was "critical" to the case; and (4) allowing the affidavits would not disrupt trial preparations, App. 44-45.

The District Court, however, struck the affidavits without prejudice because they were not made "under penalty of perjury," as required by United States ex rel. Doe v. Heart Solution, PC, 923 F.3d 308, 315 (3d Cir. 2019). The District Court allowed Defendants to cure the deficiency by submitting compliant affidavits, which they did.[5]

---

[5] The District Court acted within its discretion in denying Plaintiffs' motion to strike. Rule 26(a)(1) requires the disclosure of "the name . . . of each individual likely to have discoverable information—along with the subjects of that information." Fed. R. Civ. P. 26(a)(1)(A)(i). When Rule 26's requirements are not met, district courts may exclude evidence on a motion to strike under Rule 37. See Fed. R. Civ. P. 37(c)(1). "[T]he exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 791-92 (3d Cir. 1994) (quotation marks and citation omitted). Here, the Giedieviellses' affidavits could not reasonably have surprised or prejudiced Plaintiffs. While Renee Giedieviells was incorrectly identified as "Renee Getwell" in the 911 record and the Police Incident Report produced during discovery, Cost, Sr. testified that he knew "Renee Getwell" was the neighbor across the street who called 911. App. 108. Additionally, Plaintiffs did not produce any evidence of bad faith on the part of Defendants in not providing these affidavits during discovery. Finally, because we decided Heart Solution after Defendants submitted the Giedieviellses' affidavits but before the District Court ruled on the motion to strike, the Court fairly allowed Defendants to cure the Heart Solution issue so that the "critical" information in the affidavits could be considered at summary judgment. App. 45.

5

The District Court thereafter granted Defendants' summary judgment on Plaintiffs' claims of unlawful search and seizure, false arrest and imprisonment, and Cost, Sr.'s claim of malicious prosecution, because the 911 call and the shouts the officers heard presented exigent circumstances that permitted their warrantless entry into Plaintiffs' home. The Court found that these facts, together with Rought's confirmation that there had been a loud fight in the house between Cost, Sr. and his daughter, provided reasonable suspicion to detain Cost, Jr., and probable cause to arrest Cost, Sr. because the facts were "sufficient to warrant a person of reasonable caution to conclude that Cost, Sr. . . . engag[ed] in fighting in such a manner that recklessly caused public annoyance or alarm," in violation of Pa. Cons. Stat. § 5503(c). App. 25-26.

Plaintiffs appeal.[6]

## II[7]

To state a claim for relief under § 1983, "a plaintiff must demonstrate the defendant, acting under color of state law, deprived him or her of a right secured by the

---

[6] The District Court also granted Defendants' motion for summary judgment on Plaintiffs' excessive force and municipal liability claims under Monell v. Department of Social Services, 436 U.S. 658 (1978), and declined to exercise supplemental jurisdiction over Plaintiffs' state law claims. Because Plaintiffs make no arguments concerning these issues in their opening brief, Plaintiffs have waived their right to appeal these rulings. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993) (holding that where appellant fails to raise an issue in its opening brief, "the appellant normally has abandoned and waived that issue on appeal and it need not be addressed by the court of appeals").

[7] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291. We review de novo a district court's order granting summary judgment. Andrews v. Scuilli, 853 F.3d 690, 696 (3d Cir. 2017). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Constitution or the laws of the United States." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). Accordingly, to evaluate Plaintiffs' claims in the context of a motion for summary judgment, we must determine whether there are disputed issues of material fact that, if found for Plaintiffs, would show they were deprived of a constitutional right. See id. Plaintiffs bring the following Fourth Amendment claims against Defendants: unlawful search and seizure, false arrest, false imprisonment, and malicious prosecution. As explained below, Plaintiffs have not shown that Defendants violated their rights.

Plaintiffs' unlawful search claims fail if an exception to the warrant requirement permitted the search. See United States v. Coles, 437 F.3d 361, 365 (3d Cir. 2006) ("Warrantless searches and seizures inside someone's home . . . are presumptively unreasonable [under the Fourth Amendment] unless . . . probable cause and exigent circumstances exist to justify the intrusion." (emphasis omitted)). Plaintiffs' unlawful seizure, false arrest, false imprisonment, and malicious prosecution claims fail if Defendants had probable cause to believe that a crime was being committed. See James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012) ("To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish . . . that the arrest was made without probable cause."); Zimmerman v. Corbett, 873 F.3d 414, 418 (3d Cir. 2017) ("To prevail on [a] malicious prosecution claim under § 1983, [a plaintiff] must establish that . . . the defendant[s] initiated the proceeding without probable cause." (third

alteration in original) (citation omitted)).[8]  We will first examine whether an exception to the warrant requirement permitted the officers to enter Plaintiffs' home, and then we will address whether the officers had probable cause to believe that a crime was being committed.

A

Police officers may enter a home without a warrant under exigent circumstances. See Brigham City v. Stuart, 547 U.S. 398, 403 (2006) ("[L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.").  Exigent circumstances exist where there is "danger to the lives of officers or others." Coles, 437 F.3d at 366.  "We evaluate whether exigent circumstances existed by an objective standard; the subjective intent of the officer is irrelevant." United States v. Mallory, 765 F.3d 373, 383 (3d Cir. 2014).

Exigent circumstances justified the officers' warrantless entry into Plaintiffs' home.  The 911 call indicated that there was a "male female verbal dome[stic]" dispute at Plaintiffs' home and that children were there and possibly crying.  App. 233-34.  Ranakoski and McMorrow testified that there was no yelling when they reached the door

_____

[8] As previously noted, Cost, Jr. did not bring a malicious prosecution claim, as he was not charged with any crime.  Additionally, because he was never placed under arrest, his false imprisonment claim requires only that he was detained without reasonable suspicion that a crime was committed.  See Gwynn v. City of Phila., 719 F.3d 295, 304 n.4 (3d Cir. 2013).  Because reasonable suspicion is a "less demanding" standard than probable cause, United States v. Ritter, 416 F.3d 256, 263 n.7 (3d Cir. 2005), our probable cause analysis suffices for the reasonable suspicion required as to Cost, Jr.

of the home.[9] The officers knocked and announced their presence at both the front and side doors for several minutes, but they received no response and remained concerned that "there was somebody in that home that needed aid." App. 67. They relayed these concerns to Chief Resetar, who also believed that exigent circumstances existed. Considering the totality of these circumstances, Ranakoski and McMorrow "reasonably . . . believe[d] that someone [was] in imminent danger," so their entry into Plaintiffs' home was justified without first obtaining a warrant. Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006) (quotation marks and citation omitted); see also United States v. Black, 482 F.3d 1035, 1040 (9th Cir. 2007) (noting that "the exigencies of domestic abuse cases present dangers that . . . may override considerations of [Fourth Amendment] privacy"); United States v. Rohrig, 98 F.3d 1506, 1522 (6th Cir. 1996) (explaining that "the governmental interest in immediately abating . . . loud and disruptive noise in a residential neighborhood is sufficiently compelling to justify warrantless intrusions under some circumstances," including a domestic disturbance "for an extended period of time without serving any apparent purpose"); United States v. Brown, 64 F.3d 1083, 1086 (7th Cir. 1995) (observing "outcries would justify entry"); cf. Georgia v. Randolph, 547 U.S. 103, 118 (2006) ("No question . . . reasonably could be [raised] about the authority of the police to enter a dwelling to protect a resident from domestic violence[.]"). Because exigent circumstances justified the officers' entry and sweep of the premises, Plaintiffs' Fourth Amendment unlawful search claims fail.

---

[9] McMorrow had also previously been to Plaintiffs' home in response to a report of a domestic dispute.

B

The existence of probable cause defeats Plaintiffs' unlawful seizure, false arrest, false imprisonment, and malicious prosecution claims.

Probable cause exists if, "at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense." Wright v. City of Phila., 409 F.3d 595, 602 (3d Cir. 2005) (alterations in original) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). Probable cause "does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt," Zimmerman, 873 F.3d at 418 (quotation marks and citation omitted), or "that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate," Dempsey v. Bucknell Univ., 834 F.3d 457, 467 (3d Cir. 2016) (citation omitted). In this context, "we view all such facts and assess whether any reasonable jury could conclude that those facts, considered in their totality in the light most favorable to the nonmoving party, did not demonstrate a 'fair probability' that a crime occurred." Id. at 468.

"Whether any particular set of facts suggest that an arrest is justified by probable cause requires an examination of the elements of the crime at issue." Wright, 409 F.3d at 602. Cost, Sr. was charged with disorderly conduct. Under Pennsylvania law, "[a] person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the

10

actor." 18 Pa. Cons. Stat. § 5503(a)(4). "Public" means "affecting or likely to affect persons in a place to which the public or a substantial group has access . . . [including] any neighborhood." Id. § 5503(c).

Here, Ranakoski and McMorrow had probable cause to believe that a crime was occurring when they arrived at Plaintiffs' home. The 911 call indicated that there was a domestic dispute taking place which was loud enough to be heard across the street. This conduct caused "public inconvenience, annoyance or alarm" and "serve[d] no legitimate purpose." 18 Pa. Cons. Stat. § 5503(a)(4).[10] Rought told the officers that Cost, Sr. was loudly arguing with his daughter for about a half-hour regarding her cell phone, that she brought the children upstairs "to get away from" him, and that she declined to answer the door when the officers knocked because she did not want to leave her children alone upstairs. App. 298. This information, coupled with the 911 call, the shouts for help the officers heard, and Cost, Sr.'s refusal to supply his identification, provided a basis for a reasonable police officer to conclude that the offense of disorderly conduct had been committed. The presence of probable cause defeats Plaintiffs' unlawful seizure, false arrest, false imprisonment, and malicious prosecution claims. See Zimmerman, 873 F.3d at 418 (malicious prosecution); James, 700 F.3d at 680 (false arrest and imprisonment);

---

[10] After the officers forced entry, they detained Plaintiffs and conducted a security sweep of the premises. The officers then reviewed Cost, Jr.'s identification and released him from his handcuffs. These acts were reasonable and defeat Cost, Jr.'s claim of false imprisonment. See, e.g., Adams v. Williams, 407 U.S. 143, 146 (1972) ("[B]rief [detention] . . . to determine [a suspect's] identity or to maintain the status quo momentarily while obtaining more information[] may be most reasonable in light of the facts known to the officer at the time.").

11

Coles, 437 F.3d at 365 (seizure). Therefore, the District Court properly granted summary judgment in favor of Defendants.

III

For the foregoing reasons, we will affirm the District Court's order granting summary judgment for Defendants.