PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2867
_____

TIMOTHY ELLIS

v.

WESTINGHOUSE ELECTRIC CO., LLC,

Appellant

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-18-cv-01442)
District Judge: Honorable Mark R. Hornak

_____

Argued on April 6, 2021

Before: AMBRO, GREENAWAY, JR., and BIBAS, <u>Circuit
Judges</u>

(Opinion filed: August 30, 2021)

Robert B. Niles-Weed (Argued)
Weil Gotshal & Manges
767 Fifth Avenue
New York, NY 10153

Zachary Tripp
Weil Gotshal & Manges
2001 M Street, N.W.
Suite 600
Washington, DC 20036

Shelly R. Pagac
Eric G. Soller
Pietragallo Gordon Alfano Bosick & Raspanti
301 Grant Street
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219

Counsel for Appellant


Joel S. Sansone (Argued)
Massimo Terzigni
Elizabeth A. Tuttle
Law Offices of Joel Sansone
603 Stanwix Street
Two Gateway Center, Suite 1290
Pittsburgh, PA 15222

Counsel for Appellee

_____

OPINION OF THE COURT
_____

AMBRO, <u>Circuit Judge</u>

Dates matter in bankruptcy. For creditors, none is more important than the "bar date," a deadline set by the bankruptcy court for them to file claims against, or request payment from, the debtor. Claims filed after the bar date without an acceptable excuse are usually discharged (meaning the creditor cannot pursue the claim further and the debtor is released from the liability). The bar date interacts with the Chapter 11 plan of reorganization, which typically discharges claims occurring before the plan is confirmed (*i.e.*, approved) by the bankruptcy court.

But what if the claim arose after a plan was confirmed and before it goes into effect? To our knowledge, no federal appellate court has directly addressed this issue. We hold that sections 503 and 1141 of the Bankruptcy Code authorize bankruptcy courts to set and enforce bar dates for administrative expense claims, including claims arising after confirmation of a plan but before its effective date. The holder of a post-confirmation administrative expense claim cannot choose to bypass the bankruptcy process, so if the claim is not timely filed by the bar date, it faces discharge like a pre-confirmation claim. Thus, we reverse the District Court's decision that a claim for employment discrimination that arose after plan confirmation and was not filed by the applicable bar date could not be discharged.

3

## I. BACKGROUND

### A. The Westinghouse Chapter 11 Case

Westinghouse Electric Company LLC (together with its debtor-affiliates, "Westinghouse" or the "Debtors") operates a global nuclear power business. In March 2017, following costly delays with several nuclear power projects, Westinghouse filed for Chapter 11 bankruptcy in the Southern District of New York (the "New York Bankruptcy Court" or "Bankruptcy Court"). *In re Westinghouse Elec. Co. LLC*, No. 17-10751-MEW, ECF No. 1 (Bankr. S.D.N.Y. Mar. 29, 2017). Through the bankruptcy process, Westinghouse hoped to receive "judicial confirmation of a reorganization plan that [would] enable[] [it] to restructure its pre-bankruptcy debts, pay its creditors, and return to active operation as a viable enterprise, free from judicial control and creditor scrutiny." *In re Great Am. Pyramid Joint Venture*, 144 B.R. 780, 788 (Bankr. W.D. Tenn. 1992).

Filing a bankruptcy petition has immediate consequences. It "'creates an estate' that, with some exceptions, comprises 'all legal or equitable interests of the [Debtors] in property as of the commencement of the case.'" *City of Chicago v. Fulton*, 141 S. Ct. 585, 589 (2021) (quoting 11 U.S.C. § 541(a)(1)). The petition also affects the classification and treatment of claims under the Bankruptcy Code. Holders of prepetition claims[1] not secured by collateral

---

[1] The Bankruptcy Code defines the term "claim" broadly to include the "right to payment" as well as the "right to an equitable remedy for breach of performance if such breach

4

typically recover only a fraction of the claim amount. On the other hand, postpetition "actual, necessary costs and expenses of preserving the estate" are treated as administrative expense claims entitled to priority under the Bankruptcy Code's distribution scheme and paid in full under a Chapter 11 plan unless the claimant agrees to other treatment. *See* 11 U.S.C. §§ 503(b)(1)(A), 507(a)(2), 1129(a)(9)(A); *In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021) (hereinafter "*EFH Admin Expense Decision*").

In June 2017, the New York Bankruptcy Court set a "General Bar Date" for September 1, 2017—the deadline by which creditors had to file proofs of claims for most prepetition claims. As is typical in bankruptcy cases, the bar date for postpetition administrative expense claims is later than the general prepetition claims bar date because the estate continues to incur expenses throughout the bankruptcy. Westinghouse's Chapter 11 plan of reorganization (the "Westinghouse Plan" or simply the "Plan") contemplated a bar date for administrative expense claims of "the first Business Day that is 30 days following the [Plan's effective date]." App. at 260, Plan § 1.3. The Plan further provided, with its usual overlapping verbs, that "Holders of Administrative Expense Claims that . . . do not file and serve [a request for payment] by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such [] Claims against the Debtors, . . . or their property, and such [] Claims shall be deemed compromised, settled, and released as of the Effective Date." App. at 275, Plan § 2.1. The Plan also contained customary language

---

gives rise to a right to payment." 11 U.S.C. § 101(5); *see In re Rodriguez*, 629 F.3d 136, 138–39 (3d Cir. 2010).

5

discharging all claims as of the Effective Date. App. at 301–02, Plan §§ 11.1, 11.3.

Westinghouse then proceeded with negotiating and confirming the Plan. In February 2018, it informed creditors of various deadlines for filing objections to and voting on the Plan. Following a hearing, the Bankruptcy Court confirmed the Plan on March 28, 2018 (the "Confirmation Date"), concluding that it satisfied all the requirements for confirmation in 11 U.S.C. § 1129.

Although plans usually become effective shortly after confirmation, there can be a delay of months or longer in cases where, for example, the debtor must wait for regulators to approve the plan or investors to finalize financing. *See, e.g.*, *In re Venoco LLC*, 998 F.3d 94, 107 n.14 (3d Cir. 2021); *In re Worldcom, Inc.*, 401 B.R. 637, 640 (Bankr. S.D.N.Y. 2009). The effectiveness of the confirmed Westinghouse Plan was delayed pending the closing of an investment transaction, which in turn required approval from government agencies such as the Department of Energy. As a result, it did not become effective until August 1, 2018 (the "Effective Date").

That day, all the property of the Debtors' estates (subject to a few exceptions) vested in the reorganized Westinghouse, which began a fresh corporate life. *See* App. at 281, Plan § 5.1. *See generally In re Montgomery Ward, LLC*, 634 F.3d 732, 737 (3d Cir. 2011) (noting there are three entities in a successful Chapter 11, "the pre-bankruptcy debtor, the estate, and the post-bankruptcy business" (quoting Elizabeth Warren, *A Theory of Absolute Priority*, 1991 Ann. Surv. Am. L. 9, 12 (1992)). When

6

Westinghouse gave notice of the Effective Date, it also told creditors that, under the confirmed Plan, August 31, 2018 is the deadline for filing administrative expense claims (the "Administrative Claims Bar Date"). App. at 558. The notice emphasized that those who do not file a claim by then will see their claims "discharged as of the Effective Date." *Id.* All this was blessed by the New York Bankruptcy Court. App. at 250–51, Confirmation Order ¶ 47.

**B.     Ellis and the Pennsylvania District Court Case**

Timothy Ellis worked for Westinghouse from 2010 until 2018, most recently as Vice President, Global Projects Management Operations. *See Ellis v. Westinghouse Elec. Co.*, No. 2:18-cv-01442, 2020 WL 4499931, at *3 (W.D. Pa. Aug. 5, 2020) (hereinafter "Dist. Ct. Op."). On May 31, 2018, about two months after the New York Bankruptcy Court confirmed the Plan, Westinghouse terminated Ellis's employment, explaining that his department was being restructured. However, Ellis, 67 years old at the time, believed he was unlawfully fired due to his age. He immediately hired counsel, who represented him by filing a charge with the federal Equal Employment Opportunity Commission (the "EEOC") in July 2018. The parties agree that Ellis's employment discrimination claim "arose" when he was terminated, so it is a claim after confirmation of the Plan but before its Effective Date.

During its bankruptcy case, Westinghouse served Ellis with three notices: the first about the General Bar Date, the second about the Plan objection and voting deadlines, and the third about the Effective Date and the Administrative Claims

7

Bar Date. Ellis acknowledges receiving the first two notices but does not admit receiving the third. *See* Dist. Ct. Op. at *3–4. He never took any action in the New York Bankruptcy Court to assert his employment discrimination claim.

Instead, in October 2018, Ellis filed suit in the Western District of Pennsylvania District Court against (the now reorganized) Westinghouse. It was initially stayed pending Ellis's exhaustion of state administrative remedies. After the case resumed in July 2019, Westinghouse filed a motion for summary judgment, arguing that Ellis's claim, as an administrative expense claim not timely filed by the Administrative Claims Bar Date, was discharged by the Plan and the order confirming it.

The District Court denied Westinghouse's motion and granted summary judgment in favor of Ellis as to the bankruptcy discharge issue. It first concluded that Ellis received proper notice of the Administrative Claims Bar Date, in part because the Debtors' claims and noticing agent affirmed that all three notices were sent to Ellis and none were returned as undeliverable. Dist. Ct. Op. at *7. However, the Court ultimately decided that Ellis's claim was not discharged in the bankruptcy, concluding that § 503 of the Bankruptcy Code does not authorize the use of a bar date to discharge post-confirmation administrative expense claims. *Id.* at *13. It further held that § 1141(d) of the Bankruptcy Code prohibits the discharge of post-confirmation claims. *Id.* at *19.

Recognizing the novel and complex legal questions involved, the District Court certified the following questions to our Court for immediate interlocutory appeal:

8

Where a plaintiff's claim under the Age Discrimination in Employment Act (and parallel provisions of state law) arises after the confirmation of an approved bankruptcy plan of reorganization, but prior to the effective date of the plan and the vesting of the bankruptcy estate as set forth and defined in such plan by order of the bankruptcy court: (1) is the plaintiff's claim barred by the provisions of 11 U.S.C. § 503 if the plaintiff did not file such employment discrimination claim as a claim for an administrative expense prior to the post-confirmation administrative claim bar date under the plan; and/or (2) is such employment discrimination claim discharged by the provisions of 11 U.S.C. § 1141, and/or under the principles of *res judicata*, if such claim was not filed in the bankruptcy court prior to the post-confirmation effective and discharge dates set out in the plan?

Dist. Ct. Op. at *19. We agreed to hear the appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as Ellis asserts a claim under the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*[2] The District Court also had jurisdiction

---

[2] To the extent Ellis is still pursuing a state law claim under the Pennsylvania Human Relations Act, the District Court had supplemental jurisdiction over it. *See* 28 U.S.C. § 1367(a).

9

to decide whether Ellis's claim was discharged in the New York Bankruptcy Court case. *See In re Apex Oil Co.*, 406 F.3d 538, 543 (8th Cir. 2005) (holding that a non-bankruptcy court "is fully competent to determine whether the [bankruptcy] plan and the injunction" barred certain claims); *see also Whitehouse v. LaRoche*, 277 F.3d 568, 576 (1st Cir. 2002) (explaining that bankruptcy and non-bankruptcy courts have concurrent jurisdiction over whether a claim was discharged by bankruptcy).[3]

We have jurisdiction over this interlocutory appeal under 28 U.S.C. § 1292(b). Our scope of review "is generally constrained to the questions certified for review by the district court, [though] we may consider any grounds justifying reversal." *Morris v. Hoffa*, 361 F.3d 177, 196 (3d Cir. 2004) (emphasis and quotation omitted). Our standard of review is plenary, meaning we review anew the District Court's summary judgment decisions, applying the same standard it must apply. *See Rivas v. City of Passaic*, 365 F.3d 181, 193 (3d Cir. 2004). To prevail, Westinghouse as the moving party must show "that there is no genuine dispute as to any material

---

[3] A week after filing its summary judgment motion, Westinghouse also filed a parallel motion with the New York Bankruptcy Court seeking to enjoin Ellis from prosecuting his claim. After he argued in the Pennsylvania District Court that the New York Bankruptcy Court motion was duplicative, Westinghouse agreed to continue that motion indefinitely. *See* Dist. Ct. Op. at *2. The District Court noted that, assuming the Bankruptcy Court maintained jurisdiction, Westinghouse could have withdrawn its motion for summary judgment and proceeded only in the latter Court. *Id.* at n.2.

10

fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. ANALYSIS

"The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (internal quotation marks and citation omitted); *see also N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 527 (1984) ("[T]he policy of Chapter 11 is to permit successful rehabilitation of debtors."). However, the debtor's interest in a fresh start is not absolute, as the Bankruptcy Code tries to strike the "delicate balance between the competing interests of creditors pursuing their claims and debtors in obtaining a fresh start and finality." *In re Bugarenko*, 373 B.R. 394, 400 (Bankr. E.D. Pa. 2007). This case puts in play these two competing interests.

Against this backdrop, we conclude as follows. First, Ellis's employment discrimination claim is an "actual and necessary" administrative expense claim under § 503(b)(1)(A). Second, § 503 authorizes bankruptcy courts to set and enforce bar dates for administrative expense claims. Third, that provision permits the discharge of post-confirmation administrative expense claims not timely filed by the bar date. Fourth, § 1141(d)(1)'s language regarding the discharge of pre-confirmation claims is a default rule that can be overridden by the plan and confirmation order. Finally, various policy and practical concerns about the discharge of post-confirmation claims are overstated and ignore the creditor-friendly protections still in place.

11

**A.     A Postpetition Employment Discrimination Claim Is an Administrative Expense Claim.**

For the Administrative Claims Bar Date to be invoked, Ellis's claim must be an "Administrative Expense Claim" as defined by the Plan.  The Plan's definition references § 503(b) of the Bankruptcy Code, which provides in relevant part that, "[a]fter notice and a hearing, there shall be allowed administrative expenses, . . . including the actual, necessary costs and expenses of preserving the estate."  App. at 260, Plan § 1.2; 11 U.S.C. § 503(b).  To qualify, the claimant must typically show there was a "[postpetition] transaction between the claimant and the estate" and the "expenses yielded a benefit to the estate."  *See EFH Admin Expense Decision*, 990 F.3d at 741 (internal quotation marks omitted) (quoting *In re Women First Healthcare, Inc.*, 332 B.R. 115, 121 (Bankr. D. Del. 2005)).  On first glance, employment discrimination claims do not fit neatly into this definition.

However, we agree with the District Court's suggestion that, per the Supreme Court's decision in *Reading Company v. Brown*, 391 U.S. 471 (1968), postpetition employment discrimination claims are "actual and necessary" administrative expenses.  In *Reading*, a bankruptcy receiver's negligence allegedly caused a fire that resulted in damage to a non-debtor third party, who then asserted an administrative expense claim against the estate.  *Id.* at 473–74.  The Court held that, under the predecessor to the Bankruptcy Code, the claim was for the "actual and necessary costs" of preserving the estate.  *Id.* at 475, 484–85.

Like the tort claim in *Reading*, an employment discrimination claim is a "cost[] ordinarily incident to

12

operation of a business." *Id.* at 483. Further, a federal employment law violation is often considered a statutory tort. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 264 (1989) (O'Connor, J., concurring) (referring to Title VII of the Civil Rights Act of 1964 as creating a "statutory employment 'tort'"). Indeed, at least two circuits have applied the *Reading* exception to employment discrimination claims. *See Sanchez v. Northwest Airlines, Inc.*, 659 F.3d 671, 679 (8th Cir. 2011) (explaining that employment discrimination claims are administrative expenses because they come "out of the regular employment relationship between the debtor and its employee");[4] *In re Zilog*, 450 F.3d 996, 999 n.1 (9th Cir. 2006) ("Thus, under *Reading* and its progeny, [employment] discrimination claims that arise post-petition but pre-

---

[4] In *Sanchez*, an employee with a postpetition, but *pre-confirmation*, discrimination claim argued it was not discharged by the bar date. 659 F.3d at 674–75. The Eighth Circuit ultimately sided with the employee, concluding his claim survived under the specific terms of the plan, which exempted from discharge any administrative expenses "incurred in the ordinary course of business." *Id.* at 678; *see also In re Eagle-Picher Indus., Inc.*, 447 F.3d 461, 467 (6th Cir. 2006) (same). Ellis does not raise a similar argument, so it is forfeited. In any event, the argument would likely be unworkable here, as the language in the Westinghouse Plan and notices differ from those cases. *See Sanchez*, 659 F.3d at 676 (providing in the relevant notice that claims do not need to be filed for "[l]iabilities incurred in the ordinary course of business").

13

confirmation can be filed as administrative expenses against the debtor's estate.").[5]

We recognize this result appears counterintuitive, as Westinghouse does not need to violate employment laws to operate. To be sure, we do not mean to imply that employment discrimination is merely a cost of doing business. But that "is the wrong prism to use in looking at the situation." *Sanchez*, 659 F.3d at 679. "Rather than focus on what went wrong, we must look at the utility of the underlying exercise." *Id.* The employment discrimination claim arose out of Ellis's employment, which without dispute benefitted the Westinghouse estate. Treating such claims as administrative expenses furthers the policy goal of § 503(b)(1)(A)—providing incentives for employees to continue working for a bankrupt company. *Pa. Dep't of Env't Res. v. Tri-State Clinical Lab'ys, Inc.*, 178 F.3d 685, 690 (3d Cir. 1999). Without the assurance that any valid employment discrimination claim would be paid in full, workers may leave based on fear that their rights will not be fully protected.

We part, however, from the District Court's suggestion that certain administrative expense claims may be categorized differently for the purposes of priority and discharge. *See* Dist. Ct. Op. at *12; *see also Sanchez*, 659 F.3d at 678 (stating in a *dictum* that "*Reading* defines administrative expenses for the

---

[5] The Ninth Circuit in *Zilog* held that a postpetition (and arguably post-confirmation) employment discrimination claim cannot be discharged "without first allowing for the presentation of such claims." 450 F.3d at 1001. That is not the case for Ellis, who received notice of the filing deadline a month before the Administrative Claims Bar Date.

14

purposes of priority status under § 503, which differ from purposes of dischargeability."). Under this view, a *Reading*-type administrative expense claim that is entitled to priority could still be outside the reach of a bar date. But this position finds no textual support in the Bankruptcy Code. A claim is either an administrative expense claim or it is not; it cannot be a chameleon. And as explained below, the importance of the bar date is even greater when the debtor's administrative solvency is at stake. As a practical matter, the District Court's position that the claim is entitled to administrative priority, but not subject to discharge, is untenable, as that would allow creditors to cherry-pick whether they want to recover from the estate or the reorganized debtor. Ellis's claim is thus an administrative expense claim under § 503 and subject to the Administrative Claims Bar Date.

**B.    Section 503 Allows Bankruptcy Courts to Set and Enforce Bar Dates for Administrative Expense Claims.**

At a high level, bar dates ensure that the promise of a fresh start is not illusory, as claims not filed and addressed in the bankruptcy cannot be asserted later against the reorganized debtor. "[I]t not only allows the trustee or debtor-in-possession to estimate the debtor's potential liabilities, it is also essential in formulating a viable reorganization plan. Without a final claims deadline, participants in the reorganization process would be hindered by undue caution in their negotiations and in voting on the plan." *In re Energy Future Holdings Corp.*, 619 B.R. 99, 118 n.109 (Bankr. D. Del. 2020) (quoting *In re Trump Taj Mahal Assocs.*, 156 B.R. 928, 938 (Bankr. D.N.J. 1993)).

15

For prepetition claims, bankruptcy courts have the power to set bar dates "before which proofs of claim against the debtor's estate must be filed." *See In re Energy Future Holdings Corp.*, 949 F.3d 806, 811 (3d Cir. 2020) (hereinafter "*EFH Bar Date Decision*"); *see also* Fed. R. Bankr. P. 3003(c)(3). In practice, they often set multiple bar dates to address the specific needs of the case. *See In re Lehman Bros. Holdings, Inc.*, 433 B.R. 113, 118–19 (Bankr. S.D.N.Y. 2010) (discussing "custom-made features" in the Bar Date Order and different bar dates based on claim types).

Claims not filed by the bar date are typically discharged, meaning the claimant cannot recover from the debtor or the reorganized debtor. *See EFH Bar Date Decision*, 949 F.3d at 811. The bar date is binding on a creditor even if he does not participate in the bankruptcy. *See Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004) ("If a creditor chooses not to submit a proof of claim, once the debts are discharged, the creditor will be unable to collect . . . ."). To avoid unnecessarily harsh results, a claimant can still file a claim after the bar date if he shows "excusable neglect." *EFH Bar Date Decision*, 949 F.3d at 814; *see also* Fed. R. Bankr. P. 9006(b)(1). Any discharge must also satisfy due process requirements. *See Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) ("*Chemetron I*") (holding that "[i]nadequate notice is a defect which precludes discharge of a claim in bankruptcy").

The bankruptcy court's power to set and enforce bar dates extends to postpetition administrative expense claims. Section 503(a) provides that "[a]n entity may timely file a request for payment of an administrative expense, or may

16

tardily file such request if permitted by the court for cause."[6] This language "provides courts with the statutory authority to set and enforce administrative claim bar dates." 4 Collier on Bankruptcy ¶ 503.02[2] (16th ed. 2021);[7] *see In re Eagle-Picher Indus., Inc.*, 447 F.3d 461, 465 (6th Cir. 2006) (explaining that the Bankruptcy Code "permit[s] the parties to establish a bar date by which time all administrative expenses must be asserted against the debtor or face discharge"); *Sanchez*, 659 F.3d at 677 (noting that an administrative expense claim bar date "force[s] creditors to comply with [it] or face a discharge").[8]

───────────────

[6] To be technical, a claimant files a "request for payment" rather than a "proof of claim" for an administrative expense claim. 4 Collier on Bankruptcy ¶ 503.02[1] (16th ed. 2021). Still, much of the logic and case law about general bar dates for prepetition claims apply with equal force to administrative expense claims. *See id.* ¶ 503.02[2] (explaining that courts have often relied on the "excusable neglect" standard to determine "whether to allow a tardily filed request for payment of an administrative expense").

[7] A debtor can choose not to set an administrative expense claim bar date. If no bar date is set, and depending on the terms of the plan, the claim could be filed any time against the debtor or the reorganized debtor, "limited only by the relevant statute of limitations." *In re Worldcom, Inc.*, 401 B.R. 637, 647 n.13 (Bankr. S.D.N.Y. 2009).

[8] One exception is that a governmental unit is not required to file a request for payment of an administrative tax expense. 11 U.S.C. § 503(b)(1)(D); 4 Collier, *supra* ¶ 503.02[3].

Section 503 thus provides both a carrot and a stick for creditors promptly to request payment of administrative expenses.  File claims on time and, if valid, they will receive priority treatment in the bankruptcy and get paid in full under the plan.  File the claims late and they will face discharge.  The harsh result is justified because, like general claim bar dates for prepetition claims, bar dates for administrative expense claims help the debtors know their liabilities and implement a viable plan to obtain a fresh start.  Because the plan must pay administrative expense claims in full under 11 U.S.C. § 1129(a)(9)(A), unexpected administrative expenses can jeopardize the entire restructuring or become a significant burden to the reorganized debtor.[9]  Inability to pay administrative expenses is called "administrative insolvency," typically resulting in conversion of the Chapter 11 case to Chapter 7 liquidation.  *See* 7 Collier, *supra* ¶ 1100.07[2] n.10; *see, e.g.*, *In re Constellation Enters. LLC*, 587 B.R. 275, 279

---

[9] In a lengthy case, the bankruptcy court may set multiple administrative claims bar dates to help the debtor implement a workable plan.  *See In re Chicago Newspaper Liquidation Corp.*, 490 B.R. 487, 491 n.4 (Bankr. D. Del. 2013).  Even here, where the Administrative Claims Bar Date was after the Effective Date, the bar date encourages claimants to file claims promptly and gives the reorganized Westinghouse comfort that it does not face significant unknown liabilities.  *See In re CM Wind Down TopCo Inc.*, No. 17-13381-SCC Docket No. 1105, Hr'g Tr. 12:13–18 (Bankr. S.D.N.Y. Dec. 13, 2018) (Chapman, J.) (explaining that the bar date applies to post-confirmation administrative expense claims because "sometimes [companies] want absolute certainty that on day [31] of the reorganized debtor's life . . . they know what they're dealing with").

(D. Del. 2018). Putting all this together, bankruptcy courts have flexibility under § 503 to set and enforce bar dates for administrative expense claims that are subject to discharge if not timely filed.

**C.     Section 503 Authorizes the Discharge of Post-Confirmation Administrative Expense Claims.**

So far we know that, were Ellis fired on March 27, 2018, (*i.e.*, the day before the Confirmation Date), his claim would be subject to discharge if not filed by a reasonable bar date (*e.g.*, 30 days after the Confirmation Date).  We next consider whether an administrative expense claim that arose between the plan's confirmation and effective date is also bound by the bar date and subject to discharge.

We begin with the text of the Bankruptcy Code.  *See Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 893 (2018).   Nothing in § 503(a) says that only pre-confirmation claims must be "timely filed."  Ellis is essentially asking us to hold that a bankruptcy court can never set a bar date that applies to post-confirmation administrative expense claims.  Section 503 recognizes no such limitation, and we generally refrain from adding words to a statute.  *See Hanover Bank v. C.I.R.*, 369 U.S. 672, 687 (1962) (explaining that courts cannot "add to or alter the words employed to effect a purpose which does not appear on the face of the statute").

In fact, when considering the broader "statutory structure," *see Merit Mgmt.*, 138 S. Ct. at 894, the only temporal limit is with the existence of the estate, not the date of plan confirmation.   Because administrative expenses preserve the bankruptcy "estate," what matters is that the claim

19

accrues against the estate before it ceases to exist. *See* 11 U.S.C. § 503(b)(1)(A). While typically the estate ends when the plan is confirmed, the plan can extend the life of the estate to a later date such as the effective date. *See Venoco*, 998 F.3d at 107 n.14; *Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 588–89 (9th Cir. 1993) (holding that where the plan "unambiguously provides for the continuation of the estate post-confirmation," there can be allowed post-confirmation administrative expense claims); *see also* 11 U.S.C. § 1141(b). Here the Plan provided that the estate's property did not vest in the reorganized debtors until the Effective Date (August 1, 2018). App. at 281, Plan, § 5.1. The Westinghouse estate therefore continued to exist until that date, and any post-confirmation expenses qualify as administrative expense claims. App. at 260, Plan § 1.2 (defining "Administrative Expense Claim" to include expenses "incurred on or after the Petition Date and *through the Effective Date*") (emphasis added).

The Bankruptcy Code thus ties the viability of administrative expense claims (and, by extension, the coverage of a bar date for those claims) to the existence of the estate, not confirmation of the plan. Permitting the bankruptcy court to manage all claims against the estate is a logical result. Where the gap between the confirmation date and effective date is significant, concerns about undisclosed liabilities are heightened, and the bar date becomes even more important. A categorical carveout from the bar date for all post-confirmation claims would needlessly tie the hands of bankruptcy courts to use the bar date as a reorganization tool. *See* 4 Collier, *supra* ¶503.02[2] (explaining that § 503 allows "courts [to] exercise their discretion in setting bar dates according to the circumstances of each case").

20

The District Court questioned whether authority for discharging an administrative expense claim can even be based on § 503, as it does not mention the word "discharge," which is discussed in § 1141. *See* Dist. Ct. Op. at *13. In practice, the specter of discharge is integral to a bar date. Without it, bar dates would have no teeth. *See* 4 Collier, *supra* ¶ 503.02[2] ("[T]he effect of not permitting the 'filing' of a tardy request (except for cause) is that such expenses will not be approved for payment from the estate."); *see also Eagle-Picher*, 447 F.3d at 465 (explaining the bar date is a deadline "by which all administrative expenses must be asserted against the debtor or face discharge").[10] We believe the better view is that §§ 503 and 1141 work in tandem. Section 503 gives bankruptcy courts the power to set and enforce bar dates. And, as discussed below, § 1141(d) allows the plan and confirmation order generally to govern the discharge of claims (with a few exceptions).

**D.    Section 1141(d)(1) Does Not Prohibit the Discharge of Post-Confirmation Claims.**

Ellis argues, and the District Court agreed, that § 1141 of the Bankruptcy Code bars the discharge of valid post-

[10] The District Court suggests that the "face discharge" language means the authority for discharge does not stem from § 503. Dist. Ct. Op. at *13. We disagree. The more logical reading, and the way we use the phrase in this opinion, is that failing to file a claim by the bar date does not automatically discharge it, as a bankruptcy court can still accept a late filing "for cause" or refuse to discharge a claim based on due-process concerns.

21

confirmation claims in this case. *See* Dist. Ct. Op. at \*18–19. The relevant provision provides:

> *Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan*, the confirmation of a plan—
> (A) discharges the debtor from any debt that *arose before the date of such confirmation*, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title . . . ; and
> (B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

11 U.S.C. § 1141(d)(1) (emphasis added).

We disagree with the Court that this provision is a categorical rule. Our reading is that § 1141(d)(1) creates a default rule for discharging pre-confirmation debts, meaning it applies only when the plan and confirmation order are silent on the issue. Here the Plan provided for the discharge of post-confirmation claims not timely filed by the Administrative Claims Bar Date. This overrides the default rule in § 1141(d)(1).

Our holding tracks the text of the statute. Placement of the "[e]xcept as otherwise provided" proviso at the beginning of subsection (d)(1) means the carveout applies to everything that follows. Tellingly, Congress did not place the proviso *after* a specific phrase in the subsection to invoke the "rule of the last antecedent." *See Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (explaining this principle of statutory interpretation under which "a limiting clause or phrase . . . should ordinarily

22

be read as modifying only the noun or phrase that it immediately follows").

Our reading is also consistent with the structure of § 1141. Elsewhere, the section preserves broad flexibility for a plan and confirmation order to override default rules. As already previewed, § 1141(b) states the default rule that confirmation vests property of the estate in the debtor but allows the plan and confirmation order to delay vesting. *See Hillis Motors*, 997 F.2d at 588–89. An identical carveout is in § 1141(c), which "states the general rule that property dealt with by the plan or the confirmation order is free and clear of all claims" after confirmation. *See* 8 Collier, *supra* ¶ 1141.04. Further, Congress knew when not to include any carveout language, as is the case with various exceptions to discharge that bind the parties no matter what the plan or confirmation order says. *See, e.g.*, 11 U.S.C. § 1141(d)(6); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 844 (2018) (reasoning that express exceptions imply there are no other exceptions).

The District Court relied on the Ninth Circuit's *dictum* that § 1141(d)(1) might prohibit the discharge of post-confirmation claims. *See Zilog*, 450 F.3d at 1001 n.5 ("We are uncertain whether post-confirmation debts can in fact be discharged in bankruptcy."). The Court suggested that the "'[e]xcept as otherwise provided' clause . . . can be read in either of two ways." *Id.* (alteration in original). First, the words might modify "any debt." Second, they might modify "'before the date of such confirmation' . . . [, so] even post-confirmation debts could be discharged if that were provided for in the reorganization plan." *Id.* The Court did not take a position but remarked it finds "the first alternative more plausible." *Id.* For the reasons laid out above, we do not follow

23

this either-or choice and read the carveout phrase to apply to everything that follows in that subsection; a plan, or the order confirming it, can trump the discharge rule provided by subsection (d)(1). For our case, that means the confirmed Westinghouse Plan governs which post-confirmation claims are subject to discharge.

We are also unpersuaded by the reliance of the District Court on *Holywell Corp. v. Smith*, 503 U.S. 47 (1992), which held that a Chapter 11 plan did not discharge tax liability assessed after the plan became effective. *Id.* at 51, 58–59. The Court remarked that "[e]ven if § 1141(a) binds creditors of the corporate and individual debtors with respect to claims that arose before confirmation, *we do not see how it can bind the United States or any other creditor with respect to postconfirmation claims*." *Id.* at 58 (emphasis added). But *Holywell* is of little value for our analysis, as it dealt with claims against a post-bankruptcy liquidating trustee after the plan took effect and had nothing to do with a bar date for administrative expenses. *Id.* at 51. Moreover, it was discussing § 1141(a), and made no mention of the discharge provision in § 1141(d). In any event, and as the District Court acknowledged, we have already clarified that *Holywell* does not mean bankruptcy plans can never bar post-confirmation liability. *In re Arctic Glacier Int'l, Inc.*, 901 F.3d 162, 167 (3d Cir. 2018).

We also understand the import of our *Arctic Glacier* decision differently than the District Court. That case was about the *res judicata* effect of a confirmed plan's release provisions on investors who purchased shares after confirmation. *Id.* at 165. It never tried to address the entire scope of when post-confirmation liability can be discharged.

24

*Id.* at 167.  The issue here is narrower—whether a creditor is bound by an administrative claim bar date approved by the Bankruptcy Court.  The analysis is not the same, for the point of a bar date is to bind creditors who did not participate in the bankruptcy.  *See Hood*, 541 U.S. at 447 ("A bankruptcy court is able to provide the debtor a fresh start . . . despite the lack of participation of all of his creditors.").

To be clear, our holding today is limited to the enforceability of a bar date for administrative expense claims and does not otherwise interfere with Ellis's rights to challenge a confirmed plan.  For example, Ellis could have objected after confirmation if the Plan's treatment of his claims were controversial (for example, by delaying payment later than is reasonable or making payments in a form other than cash, rather than paying valid claims in full in cash on the Effective Date).  And, as he did in the District Court, Ellis could contest the adequacy of the notice he received and whether discharge of his claim violated due process, which are arguments routinely reviewed by courts post-confirmation.  *See Jones v. Chemetron Corp.*, 212 F.3d 199, 209–10 (3d Cir. 2000) ("*Chemetron II*") (holding that the claim of a tort claimant who was not born as of the claims bar date was not discharged by the confirmation order); *Zilog*, 450 F.3d at 1001 n.5 ("[E]ven if the bankruptcy court had the power to discharge post-confirmation claims, the court abused its discretion in discharging the . . . claims here."); *In re Pavlovich*, 952 F.2d 114, 119 (5th Cir. 1992) (allowing a bank to challenge the debtor's post-confirmation actions).

The upshot is that holders of post-confirmation, pre-effective date administrative expense claims are bound by a bar date like other holders of claims against the estate, and thus

25

they cannot choose to bypass the bankruptcy process altogether.  Ellis may not litigate his underlying employment discrimination claim without filing a request for payment in the New York Bankruptcy Court.  And because he never filed such a request for payment, we reverse the District Court's denial of Westinghouse's motion for summary judgment.

**E.     Policy and Practical Concerns About Discharging Post-Confirmation Claims Are Overstated.**

Our holding today is supported by the Bankruptcy Code and furthers its principal purpose of granting the debtor a fresh start.  *See Marrama*, 549 U.S. at 367.  As noted, bar dates are essential for a debtor to know and manage its liabilities.  In the few cases where a bankruptcy plan does not become effective for some time after confirmation, the debtor still needs comfort that holders of post-confirmation, pre-effective date administrative expense claims will not come out of the woods later to assert them against the reorganized debtor.  Without this assurance, payments to other creditors may need to be delayed for fears that higher priority claims could be lurking.  In fact, barring the discharge of post-confirmation claims would exacerbate this problem: creditors would likely take a "wait-and-see" approach, as many would rather press their claims against a reorganized debtor with no judicial supervision.  This could saddle the reorganized debtor with significant and unexpected liabilities, hence hobbling from the start its prospects for a successful, long-term reorganization.

Still, some may be concerned that our holding favors the debtor at the expense of creditors' rights.  Those concerns fail to appreciate fully the creditor protections that still exist.  First, any discharge of a late-filed administrative expense claim must

26

comport with due process, so a claim is only subject to discharge if a creditor received adequate notice of the bankruptcy and had a fair opportunity to press his claim. *See Chemetron I*, 72 F.3d at 346 ("Due process requires notice that is reasonably calculated to reach all interested parties, reasonably conveys all the required information, and permits a reasonable time for a response." (internal citation and quotation marks omitted)). And to refresh, the bankruptcy court can still accept late filings "for cause." 11 U.S.C. § 503(a). We therefore do not share the concern that discharge of post-confirmation debts could occur "without any notice of the discharge." *See In re Holly's Inc.*, 172 B.R. 545, 561 (Bankr. W.D. Mich. 1994).[11]

Second, the burden to comply with a bar date is low. Other Westinghouse creditors with post-confirmation administrative claims were able to file timely requests for payment. Westinghouse's Op. Br. at 14 (noting claims for charges of equipment rental and maintenance and services of software company after plan confirmation). A creditor does not even have to know the amount or validity of the claim, for

---

[11] The District Court held that Ellis received adequate notice of the Administrative Expense Claim Bar Date and did not certify that part of its ruling for us to consider on appeal, so we do not reach the issue and take no position on it. *See* Dist. Ct. Op. at *8–9. Still, we reiterate that a key element of adequate notice is information about the types of claims subject to a bar date. As most claimants and attorneys will be unfamiliar with the Supreme Court's holding in *Reading*, all parties would benefit if notices of administrative expense claim bar dates make clear that tort and other litigation claims may be subject to that cutoff.

he can easily file a "protective" claim putting the debtor on notice without conceding any issues. *See DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 246 F. Supp. 3d 680, 691 (E.D.N.Y. 2017). Thus, contrary to the District Court's view, complying with the bar date does not compress the statute of limitations available to Ellis outside of bankruptcy or deprive the EEOC of enough time to investigate his allegations. *See* Dist. Ct. Op. at \*14.

Third, although holders of post-confirmation administrative expense claims had no opportunity to vote on or object to the plan before confirmation, their interests are well protected because the Bankruptcy Code requires any plan to pay valid administrative expense claims in full. *See* 11 U.S.C. § 1129(a)(9)(A). Indeed, administrative expense claims are usually considered unimpaired and not entitled to vote on the plan. *See* 11 U.S.C. § 1126(f); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 220–21 (3d Cir. 2004). And as explained earlier, a post-confirmation administrative expense claimant still has various options to challenge the treatment of his claim after plan confirmation.

Fourth, contrary to the District Court's suggestion, our holding does have limiting principles. *See* Dist. Ct. Op. at \*14. To reiterate, administrative expense claims can only be against the bankruptcy "estate." So in this case the Administrative Claims Bar Date could not discharge claims arising after the Effective Date, when the estate's property was vested in the reorganized debtors. The Court speculated that the discharge timeframe could be pushed "for months or even years to a distant" effective date. *Id.* But that ignores the reality that a debtor usually wants to emerge from bankruptcy as soon as possible. Putting aside the intangible reputational and

goodwill costs, the sheer size of professional expenses in a bankruptcy often overwhelms petition-date expectations. *See* Arturo Bris, Alan Schwartz & Ivo Welch, *Who Should Pay for Bankruptcy Costs?*, 34 J. Legal Stud. 295, 296 n.1 (2005).

Finally, Ellis's argument that filing a claim compromises his right to a jury trial is not novel, as the issue exists for pre-confirmation claims as well. Ellis's Br. at 20; *see Langenkamp v. Culp*, 498 U.S 42, 44–45 (1990) (per curiam) (holding "there is no Seventh Amendment right to a jury trial" in the claims-allowance process). Without wading into the morass on this complex topic, we note that the consequences of filing a claim are not as straightforward as Ellis suggests. *See* 1 Collier, *supra* ¶ 3.08; *see also* 28 U.S.C. § 157(e); *In re Highcrest Mgmt. Co.*, 30 B.R. 776, 778–79 (Bankr. S.D.N.Y. 1983) (lifting the automatic stay to permit a jury trial to proceed in the district court).

\* \* \* \* \*

Each bankruptcy is unique. While a reorganization plan typically becomes effective immediately after it is confirmed, in some cases there can be a significant delay. The Bankruptcy Code recognizes this complexity. Section 503 gives bankruptcy courts discretion to set and enforce bar dates by which creditors must file administrative expense claims. And while § 1141(d) states a default rule that confirmation of a plan discharges pre-confirmation debts, it preserves flexibility for the plan and confirmation order to say otherwise.

Here, Ellis's post-confirmation, pre-effective-date, employment discrimination claim was an administrative expense claim subject to a bar date. Because he never filed a

request for payment in the New York Bankruptcy Court, the claim was discharged in the bankruptcy unless he can convince that Court to accept a late filing.[12]  The result may be severe, but that is a price for a debtor's fresh start.  Creditors still have significant protections, though choosing to avoid the bankruptcy process is typically not an option.  We thus reverse the District Court's decision.

---

[12] Our decision does not prevent Ellis from filing a claim in the Bankruptcy Court and asking it to accept the late filing "for cause."  11 U.S.C. § 503(a).