**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 23-1799

LUCAS M. IVERS,

Appellant

v.

BRENTWOOD BOROUGH SCHOOL DISTRICT; FLOYD OLSAVICKY;
AGGIE GREER; BRENTWOOD EMERGENCY MEDICAL SERVICES;
NOAH MADDEN

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-20-cv-01244)
District Judge: Honorable William S. Stickman, IV

Submitted Under Third Circuit L.A.R. 34.1(a)
March 8, 2024

Before: SHWARTZ, CHUNG, and AMBRO, Circuit Judges

(Opinion Filed: March 13, 2024)

## OPINION[*]

AMBRO, Circuit Judge

Lucas Ivers sued Aggie Greer, a nurse at Brentwood High School in Allegheny County, Pennsylvania, for her conduct in examining him after another student slammed him to the ground during gym class. Ivers ultimately suffered injuries including quadriplegia that resolved, spinal fracture, disc herniation, and spinal cord contusion.

He claims Greer's actions violated his substantive due process rights per the Fourteenth Amendment under a state-created danger theory, alleging that Greer created or exacerbated the danger he faced by failing to examine or treat him adequately following the incident. Before the District Court, Greer moved for summary judgment, which the Court granted in her favor. Ivers appeals that judgment.

While what happened to Ivers is tragic, we agree with the District Court that Greer is not liable under a state-created danger theory of substantive due process. Accordingly, we affirm the District Court's grant of summary judgment in her favor.

**I**

During gym class on June 5, 2018, Ivers and another student, Noah Madden, were playing basketball when Madden became angry, lifted Ivers onto his shoulders, and slammed him to the ground. Greer, the school nurse, reported to the gymnasium, where

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

she saw Ivers lying face down on the floor underneath one of the basketball hoops. Ivers told Greer that Madden had slammed him to the ground and that he hurt all over his body. Ivers also told Greer he could not move.

Greer felt Ivers's shoulder for displacement and to see if anything was out of the ordinary. She also performed a neurological head-to-toe assessment, examining his neck and spine. Based on her examination, Greer did not believe Ivers had suffered a concussion or spinal cord injury. She did believe, however, he may have suffered a serious injury to his shoulder. Ivers testified that Greer told him he could get up by himself and accused him of "faking it." App. II at 319. Greer slid Ivers toward the wall mats in the gym with her hand on his back.[1]

Paramedics arrived roughly 20 minutes after Greer's arrival to find Ivers positioned against the wall mats. Greer told the paramedics she had checked his neck and found no pain or deformities. The paramedics performed their own neurological exam and concluded that Ivers could move all of his limbs. He also had normal motor and sensory reactions. Based on their assessment, the paramedics concluded that he had not suffered a spine injury and, as a result, stabilization or immobilization was unnecessary. The paramedics nonetheless intended to transport him to a hospital. Ivers testified that Greer told paramedics he was "being a baby" and that it would be fine to lift him up. App. II at 322.

---

[1] Greer disputes that she moved Ivers, but the District Court assumed for the purpose of summary judgment that she did so, construing the facts in Ivers's favor. We do the same in our plenary review.

Ivers's mother Catherine arrived and saw her son on the paramedics' stretcher. While she expressed concern that Ivers's shoulder appeared crooked, the paramedics told her that he was fine following their and Greer's examinations. No one believed that he had suffered a serious spine injury.

Catherine told her son to get off the stretcher and told the paramedics that they would go to MedExpress on their own. So the paramedics left the school roughly 30 minutes after their arrival.

Ivers told his mother his arm and hand hurt as they made their way to MedExpress. The two drove to the its parking lot but never went inside for treatment. Catherine considered going to the hospital instead but ultimately decided against it and drove home. While driving home, Ivers told her that nothing hurt, but once they arrived home, he said his hand hurt. When Catherine attempted to remove Ivers from the car in the driveway, he began to say he was hurting and then slid down her body and fell to the ground. Catherine called 911 and an ambulance arrived a few minutes later.

As noted, Ivers sustained injuries including quadriplegia that soon resolved, a C5 fracture, C5-C6 traumatic disc herniation, and spinal cord contusion at C5 with edema. He brought claims against Greer and other defendants not involved in this appeal. Before the District Court, Greer moved for summary judgment on Ivers's state-created danger claim against her. The District Court granted summary judgment in her favor,

4

concluding that Ivers failed to produce sufficient evidence to support his substantive due process claim.[2]

## II

Ivers claims that Greer violated his substantive due process right to bodily integrity under a state-created danger theory. He brings the claim pursuant to 42 U.S.C. § 1983. Greer argues we should affirm the District Court's grant of summary judgment in her favor because Ivers has failed to support his state-created danger claim with sufficient evidence to create a genuine dispute of material fact or, alternatively, because she is entitled to qualified immunity.

We have recognized that the Fourteenth Amendment's right of substantive due process includes protection of an individual's interest in personal bodily integrity. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008). At the same time, there is generally no affirmative obligation on the State to protect individuals from private violence. *Sanford v. Stiles*, 456 F.3d 298, 303-04 (3d Cir. 2006) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198-200 (1989)). There are two exceptions to this general rule: (1) where a special relationship exists between the State and the individual and (2) where a state-created danger is involved. *Id.* at 304. Ivers relies on the latter, claiming that Greer created or exacerbated the danger he faced by

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331. Ivers filed a timely notice of appeal of the District Court's order granting summary judgment. We thus have jurisdiction under 28 U.S.C. § 1291. Our review is *de novo*. *Ellis v. Westinghouse Elec. Co., LLC*, 11 F.4th 221, 229 (3d Cir. 2021).

failing to examine and/or treat him adequately following his encounter with the other student.[3]

The state-created danger theory allows a state actor to be liable under Section 1983 when it creates or enhances a danger that deprives a plaintiff of his or her Fourteenth Amendment right to substantive due process. *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1201, 1205 (3d Cir. 1996)). As adopted by our Court, it requires a plaintiff to show four elements:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Id.* at 304-05 (citation omitted).

---

[3] The parties do not dispute that Greer is a state actor for the purpose of Ivers's Fourteenth Amendment claim brought pursuant to Section 1983. *See Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (a plaintiff seeking to hold an individual liable under Section 1983 must establish that he or she was deprived of a federal constitutional or statutory right by a state actor).

The District Court concluded that there was insufficient evidence to support that the harm was the foreseeable or fairly direct result of Greer's conduct or that Greer acted with a degree of culpability that shocks the conscience. It also noted that Ivers failed to introduce sufficient evidence to support the fourth prong. Having made those conclusions, the Court did not reach whether Greer is entitled to qualified immunity but noted that it "would have been inclined" to conclude she is. App. 19; *Ivers v. Brentwood Borough Sch. Dist.*, No. 2:20-CV-1244, 2023 WL 2759863, at *8 n.9 (W.D. Pa. Apr. 3, 2023). For the reasons that follow, we agree with the District Court's conclusion that the evidence is insufficient to support Ivers's state-created danger claim.

To demonstrate foreseeability, Ivers must show that Greer's awareness of the potential harm "rises to [the] level of actual knowledge" or amounts to an "awareness of [the] risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips*, 515 F.3d at 238. For causation, he must show that Greer's actions "precipitated" or were the "catalyst" for the ultimate harm. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 910 (3d Cir. 1997). Actions do not meet the "fairly direct" prong when they are separated from the ultimate harm by "a lengthy period of time and intervening forces and actions." *Henry v. City of Erie*, 728 F.3d 275, 285 (3d Cir. 2013).

Here, Ivers's ultimate injuries were neither foreseeable nor fairly direct with respect to Greer's actions. No one—including Greer or the paramedics—was aware that Ivers had suffered a serious spine injury. Greer and the paramedics conducted examinations of Ivers and all reached the conclusion that he did not suffer a spine injury. Moreover, there were several intervening acts between Greer's actions and the time when

7

Ivers's injuries were discovered several hours later. For instance, the paramedics placed Ivers on a stretcher without stabilizing him; his mother directed him to get up from the stretcher and walk to her car; his mother attempted to lift him out of their vehicle; and Ivers fell to the ground after she attempted to do so. Ivers does not present any evidence, apart from speculation, directly linking any of Greer's actions to his injuries.

Nor has Ivers demonstrated that Greer acted in a way that shocks the conscience. While the standard of culpability required to demonstrate conscience-shocking action varies depending on the exigencies of the situation—ranging from intent to cause harm to deliberate indifference—Ivers has not met any applicable standard here. *See Sanford*, 456 F.3d at 309-10. Construing the evidence in the light most favorable to Ivers, Greer, at most, did the following: asked Ivers to get up even though he said he could not move; moved him to the gym wall mats by placing a hand on his back even after he said he was injured and could not move; failed to stabilize his spine; and told the paramedics that he was "being a baby" and that it would be fine to lift him. App. II at 322. These facts do not support a conscience-shocking level of culpability, under any standard, in light of the circumstances of this case, especially where Greer conducted a head-to-toe physical assessment and concluded that Ivers did not suffer a spinal cord injury, a conclusion the paramedics also reached.

Moreover, the District Court correctly concluded Ivers failed to present evidence sufficient to support the fourth element of his state-created danger theory, which "asks whether a defendant exercised his or her authority to create a foreseeably dangerous situation." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 432 (3d Cir. 2006). Under this

8

element, "[t]here must be a direct causal relationship between the affirmative act of the state and plaintiff's harm." *Id.* This is satisfied where the action is the but-for cause of the danger faced by the plaintiff. *Id.* Here, no reasonable jury could conclude that Greer directly caused Ivers's ultimate injuries.

Throughout his briefing, Ivers contends that the District Court failed to consider his own testimony which, in his view, raises a genuine issue of material fact precluding summary judgment. But the District Court properly considered both Ivers's and Greer's testimony and viewed the evidence in the light most favorable to Ivers. It nonetheless concluded he failed to provide sufficient evidence in support of his state-created danger claim. We agree with that assessment.[4]

\* \* \*

For these reasons, we affirm the District Court's judgment.

---

[4] Having concluded that Ivers has failed to support his state-created danger claim, there is no need to determine whether Greer is entitled to qualified immunity.