**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-3022
_____

CORE COMMUNICATIONS, INC.; CORETEL DELAWARE. INC.;
CORETEL NEW JERSEY, INC.; CORETEL VIRGINIA, LLC;
CORETEL WEST VIRGINIA, INC.,
Appellants

v.

AT&T ENTERPRISES, LLC
_____

On Appeal from the United States District Court for the
Eastern District of Pennsylvania
(District Court No. 2-21-cv-02771)
District Judge: Hon. Joshua D. Wolson
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 9, 2024
_____

Before: BIBAS, FREEMAN, RENDELL, *Circuit Judges*.

(Filed: August 1, 2024)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**RENDELL**, *Circuit Judge*.

Plaintiff-Appellant Core Communications, Inc. appeals an order of the District Court entering summary judgment in favor of Defendant-Appellee AT&T Enterprises, LLC. We will affirm.

I

Core Communications is a telecommunications company. It acts as an intermediary between toll-free callers and the recipient of the calls. Core provides what is known in the industry as "switched access service." This service involves accessing a central database that contains information about which telephone service provider a toll-free call should be routed to and then sending the call to that provider "for their use in furnishing service" to the "Customers' End Users," that is, the recipient of the call. JA7. AT&T is one such telephone service provider.

Core generates revenue by charging telephone service providers a fee as set forth under a "tariff." These tariffs are regulated by and on file with the Federal Communications Commission as required under the Communications Act. 47 U.S.C. § 201.[1] Although AT&T paid fees under the tariff for some time, beginning in 2018, it suspected that most of the calls routed through Core's system were illegitimate robocalls initiated to raise Core's tariff revenue rather than genuine calls initiated by legitimate

---

[1] Core also holds the right to assess state tariffs, which are regulated by various state administrative agencies. As the District Court and the parties have, we refer to the state and federal tariffs collectively.

callers seeking to reach AT&T's end users. AT&T, thus, stopped paying Core for its switched access service.

In 2021, Core responded by suing AT&T in federal court to collect purportedly due but unpaid fees. AT&T filed a motion for summary judgment, which the District Court granted. In granting summary judgment to AT&T, the District Court concluded that because "[n]o one used Core's network or facilities to originate . . . calls from or to a Company End User, . . . Core cannot recoup the access charges it seeks from AT&T." JA11. This conclusion, the District Court reasoned, was dictated by the unambiguous language of the tariff. We agree.

## II[2]

This Court reviews a district court's grant of summary judgment de novo and under the same standard employed by the district court. *Ellis v. Westinghouse Elec. Co., LLC*, 11 F.4th 221, 229 (3d Cir. 2021). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III

Under the unambiguous terms of its tariff, Core could collect fees from a telephone service provider "when originating or terminating calls from . . . a Company End User," JA112, which is a "person, firm, partnership, corporation, or other entity . . . that subscribes to or otherwise uses [Core's] exchange or other telecommunications

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. This Court has jurisdiction under 28 U.S.C. § 1291.

services . . . ." JA66. "Telecommunications Service," in turn means "the offering of telecommunications for a fee." JA73.

The District Court correctly reasoned that under these terms, Core could collect fees from AT&T only when some person or entity subscribed to or paid for Core's services.[3] It is undisputed that no one subscribed to or paid Core for its services as defined by the tariff. Thus, Core was not entitled to payment from AT&T.

As the District Court succinctly put it, "[n]o one used Core's network or facilities to originate or terminate calls from . . . a Company End User, so Core cannot recoup the access charges it seeks from AT&T." JA11 (footnote omitted). While Core urges that it need not have had any subscriber relationship with or charged a Company End User any fee for Core to nevertheless collect a fee from AT&T for a Company End User's "otherwise us[ing]," JA66, its services, this argument is unavailing.

The District Court correctly observed that the term "uses" in this context does not refer to the general employment of Core's "network . . . no matter how remote and regardless of whether [a] user pays Core" for access. JA12 (quotation marks omitted). Instead, the language of the tariff makes clear that "use" means the employment of Core's services "for a fee." JA12. The District Court, moreover, noted that this interpretation of the term comports with both the statute, which provides that the furnishing of "telecommunication service[s]" is to be in exchange for a fee, 47 U.S.C. § 153(53), and

---

[3] Federal courts have authority to interpret tariffs when the terms of the tariff are used in their ordinary meaning and their construction is solely an issue of law. *Great N. Ry. Co. v. Merch. Elevator Co.*, 259 U.S. 285, 291 (1922).

4

with the FCC's decision *In re Qwest Commc'ns Co., LLC v. N. Valley Commc'ns Co., LLC*, 26 F.C.C. Rcd. 8332, 8336 (2011) (concluding that a proposed tariff was unlawful because "the Commission's access service rules and orders establish that a [Local Exchange Carrier] may tariff access charges only if those charges are for transporting calls to or from an individual or entity to whom the [Local Exchange Carrier] offers service *for a fee*").

Far from invalidating its tariff in violation of the Communications Act, as Core urges, the District Court gave effect to the plain and unambiguous terms of the tariff. And while Core is not permitted to recoup fees from AT&T under this tariff and on these facts, the tariff and Core's right to fees thereunder have been left entirely undisturbed. Thus, to the extent that Core provides services covered by the tariff in the future, it may recover such fees. In this case, however, as the District Court correctly concluded, Core did not provide such covered services.

IV

For these reasons, we will affirm.