**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3384
_____

JOHN R. ZIMMERMAN

v.

THOMAS W. CORBETT; LINDA L. KELLY;
FRANK G. FINA; K. KENNETH BROWN, II; MICHAEL
A. SPROW; ANTHONY J. FIORE; GARY E. SPEAKS,
Appellants
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(No. 1-13-cv-02788)
District Judge: Honorable Yvette Kane
_____

Argued
February 7, 2017
_____

Before: McKEE, COWEN, and FUENTES, *Circuit Judges*

(Opinion Filed: October 16, 2017)
_____

Joshua M. Autry, Esq. **[ARGUED]**
Frank J. Lavery, Jr., Esq.
Lavery Faherty Patterson
225 Market Street
Suite 304, P.O. Box 1245
Harrisburg, PA 17108

Amy Zapp, Esq.
Office of Attorney General of Pennsylvania
Strawberry Square
Harrisburg, PA 17120

    *Attorneys for Appellants Thomas W. Corbett, Jr.,*
*Frank G. Fina, K. Kenneth Brown, II, Michael A. Sprow,*
*Anthony J. Fiore, Gary E. Speaks*

Frank J. Lavery, Jr., Esq.
Amy Zapp, Esq.

    *Attorneys for Appellant Linda L. Kelly*

Devon M. Jacob, Esq. **[ARGUED]**
P.O. Box 837
Mechanicsburg, PA 17055

    *Attorney for Appellee*

_____

OPINION OF THE COURT
_____

McKEE, *Circuit Judge*.

## I. INTRODUCTION

Appellants are current and former high ranking officials of the Commonwealth of Pennsylvania, including a former Attorney General who subsequently became Governor.[1] They appeal the District Court's partial denial of

---

[1] Specifically, they are: Thomas W. Corbett, former Attorney General and Governor of Pennsylvania, Frank G. Fina, Chief Deputy Attorney General in the Office of Attorney General for the Commonwealth of Pennsylvania, K. Kenneth Brown, II, a Senior Deputy Attorney General in the Office of Attorney General for the Commonwealth of Pennsylvania, Michael A. Sprow, a Senior Deputy Attorney General in the

their motion for judgment on the pleadings in an action that John Zimmerman, a former employee of the state legislature, filed against them under 42 U.S.C. § 1983. Zimmerman alleged that Appellants were all involved in bringing criminal charges against him and that those charges amounted to malicious prosecution in violation of both the Fourth and Fourteenth Amendments of the United States Constitution and Pennsylvania law.[2]

For the reasons that follow, we conclude that there was probable cause to initiate those criminal proceedings and that Zimmerman can therefore not establish a prima facie case of malicious prosecution. We will therefore reverse the District Court's order insofar as it denied Appellants' motion for judgment on the pleadings.[3]

## II. FACTS AND PROCEDURAL HISTORY

This case stems from criminal charges filed against Zimmerman, who was a member of the staff of John M. Perzel. Perzel was a member of the Pennsylvania General Assembly representing the 172nd Legislative District in the

Office of Attorney General for the Commonwealth of Pennsylvania, Anthony J. Fiore, a Special Agent in the Office of Attorney General for the Commonwealth of Pennsylvania and Director of the Bureau of Investigations for the Office of Inspector General for the Commonwealth of Pennsylvania, and Gary E. Speaks, a Special Agent in the Office of Attorney General of the Commonwealth of Pennsylvania. Each of them was a defendant in the suit Zimmerman filed. For the sake of clarity, we will collectively refer to them as the "Appellants."

[2] The District Court dismissed all claims against Defendant Linda L. Kelly, former Attorney General of Pennsylvania.

[3] The District Court's order denying Appellants' motion for judgment on the pleadings is immediately appealable because it denied Appellants' assertion of qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Because we conclude that the uncontested facts do not establish the elements of malicious prosecution, we do not need to reach the issue of qualified immunity.

3

Pennsylvania House of Representatives. Corbett, then Attorney General of Pennsylvania, conducted an investigation after receiving information "that members of the Democratic caucus received bonuses for campaign related work performed on state time."[4] Zimmerman, Perzel, and Corbett were all Republicans. In September 2007, Perzel asked Zimmerman to arrange a meeting with Corbett.[5] "Corbett wanted Perzel to back him for Governor. . . .[,]"[6] but Perzel refused.[7] At the time, both Corbett and Perzel intended to run for Governor in 2010.[8]

In November 2009, Corbett announced grand jury presentments resulting in criminal charges against ten ranking Republicans including "Perzel and his staff (one legislator and nine staff members), in what is now commonly referred to as [the] 'Computergate' [scandal]."[9] Pursuant to that investigation, the grand jury subpoenaed on the House Republican Campaign Committee (the "HRCC") seeking production of campaign material.[10]

Zimmerman was one of the nine staff members arrested pursuant to this investigation.[11] Zimmerman was charged with intentionally hindering an investigation "by concealing or destroying evidence of a crime."[12] Those charges arose from allegations that he caused boxes containing campaign material that was the subject of a grand jury subpoena to be moved from their original location to a location controlled by the HRCC to prevent the grand jury from finding them. Appellants claimed that a male conspirator telephoned the HRCC from Zimmerman's desk phone and warned that boxes of campaign material would be delivered to the HRCC. Appellants also alleged that

---

[4] 55a ¶¶ 15–16.
[5] 55a ¶¶ 17.
[6] 56a ¶ 22.
[7] 56a ¶ 24.
[8] 55a ¶ 22.
[9] 57a ¶ 32.
[10] Appellant Br. at 11; *see also* 222a.
[11] 57a ¶ 33.
[12] 77a ¶ 122.

Zimmerman was typically at his desk, and that campaign material was actually moved to the HRCC after the call.[13]

Based on evidence of that phone call from Zimmerman's line, Zimmerman was charged with (1) Hindering Apprehension or Prosecution; (2) Obstructing Administration of Law or Other Governmental Function; (3) Criminal Conspiracy for Hindering Apprehension or Prosecution; and (4) Criminal Conspiracy for Obstructing Administration of Law or Other Governmental Function.[14] Appellants subsequently dismissed the charges against Zimmerman.

Subsequently, Zimmerman filed the instant complaint. He alleged that Appellants maliciously prosecuted him in violation of the Fourth and Fourteenth Amendments as well as Pennsylvania law.

Appellants moved to dismiss Zimmerman's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The District Court concluded *inter alia* that Appellants were not entitled to qualified immunity on claims arising from allegations that (1) they manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings; (2) they destroyed exculpatory evidence; and (3) Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements. This appeal followed.

## III. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1331. Our jurisdiction is based upon 28 U.S.C. § 1291. We review a denial of a motion for judgment on the pleadings de novo.[15] "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule

---

[13] Appellant Br. at 11; 81a ¶ 146; 62a ¶ 69.
[14] 76a ¶ 120.
[15] *Allah v. Al–Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000).

12(b)(6) motion."[16] A motion for judgment on the pleadings should be granted if the movant establishes that "there are no material issues of fact, and he is entitled to judgment as a matter of law."[17] In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party.[18]

## IV. DISCUSSION

Appellants advance several arguments, including arguments that the District Court erred in denying their claim of qualified immunity. However, our resolution of this appeal begins and ends with Zimmerman's failure to establish a prima facie case of malicious prosecution.

To prevail on his malicious prosecution claim under § 1983, Zimmerman must establish that "(1) the defendant[s] initiated a criminal proceeding; (2) the criminal proceeding ended in [his] favor; (3) the defendant[s] initiated the proceeding without probable cause; (4) the defendant[s] acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) [he] suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."[19] Similarly, to prove a malicious prosecution claim under Pennsylvania law, a plaintiff must show that the defendant "instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of the plaintiff."[20]

---

[16] *Revell v. Port Auth. of NY, NJ*, 598 F.3d 128, 134 (3d Cir. 2010).

[17] *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005) (citing *Soc'y Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)).

[18] *See Allah*, 226 F.3d at 249.

[19] 34a (citing *Halsey v. Pfeiffer*, 750 F.3d 273, 296–97 (3d Cir. 2014) (quoting *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007))).

[20] *Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988).

Probable cause exists if "the facts and circumstances within [the Officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that a crime had been committed.[21] "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt."[22]

The criminal proceeding against Zimmerman did end in his favor, and Zimmerman contends (as he must) that Appellants initiated the prosecution without probable cause. However, Zimmerman does not dispute any of the following: (1) a man called the HRCC from Zimmerman's phone line and told the HRCC to expect a delivery of boxes of campaign material; (2) Zimmerman was usually at his desk; or (3) boxes containing campaign material were moved to the HRCC as promised in the call from Zimmerman's phone line. Instead, he claims that many others had access to his phone, he "was not present when the boxes were moved, and had no knowledge of the same."[23] He also argues that Room 414, where the boxes were taken, was commonly referred to as "Perzel's Office" and that this room "actually consisted of a cluster of eight rooms and the woman's restroom. Both Perzel's and Representative Sandra J. Major's offices were located [there]."[24] The door to this space was left open during business hours, and "anyone in the Capital could walk into [that room]."[25] When seated at his desk, Zimmerman "could

---

[21] *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964).

[22] *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482–83 (3d Cir. 1995).

[23] 63a ¶ 72.

[24] Appellee Br. at 14; *see also* 59a ¶ 43-45; 75a ¶ 115(f)(vi) ("The Defendants withheld from the grand jury the fact that Lochetto's and Zimmerman's presence or absence from the Capital could have been tracked, at least in part, through the access card system for the parking garage.").

[25] Appellee Br. at 14–15; *see also* 59a ¶ 47; 75a ¶ 115(f)(ii) ("The Defendants withheld from the grand jury the fact that literally anyone in the Capital building (including but not limited to, capital police, the cleaning crew, Sandra Majors'

not see the front door to Room 414 or the conference room."[26] Zimmerman further argues that Appellants "knew that [his] phone line was on numerous phones within [that room], not just on [his] phone, and could have been utilized by almost anyone."[27] In sum, Zimmerman argues that because anyone could have moved the subpoenaed materials to Room 414 and anyone could have used "[his] phone line" to call the HRCC, Appellants did not have probable cause to arrest him.

However, given the uncontested facts, while Zimmerman's arguments may well have been sufficient to raise a reasonable doubt that would have resulted in an acquittal at trial, they do not negate the fact that Appellants had probable cause to prosecute him.[28] There is no dispute that Zimmerman was normally at his desk, that a male conspirator called from Zimmerman's office desk phone line to tell the HRCC to expect a delivery of boxes of campaign material, or that boxes of campaign material were then moved to a location controlled by the HRCC. Moreover, the fact that Perzel's office consisted of several rooms, and there was "unfettered access to Room 414,"[29] does not negate the

---

staff of three, and a receptionist), had unfettered access to Room 414 and could have placed the call to the HRCC from multiple phones using Zimmerman's telephone line, and could have moved the boxes in question.").

[26] 60a ¶ 51; *see also* 75a ¶ 115(f)(v).

[27] Appellee Br. at 15; 74a–75a ¶ 115(f)(i), (iii) ("The Defendants withheld from the grand jury the fact that Zimmerman's telephone line could be accessed on the receptionist's a n d [others'] telephones, and likely on other telephones in Room 414. . . . The Defendants withheld from the grand jury the fact that the call was likely placed by [Mark] Miller[, the Director of Messenger Services,] during his special trip to Room 414 as noted in the messenger log.").

[28] *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) ("[T]he Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense. . . . [T]he mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest.").

[29] 75a ¶ 115(f)(ii).

possibility that Zimmerman was the person who called the HRCC in an effort to conceal evidence. Accordingly, even assuming that Zimmerman's allegations are true, Appellants still had probable cause to prosecute Zimmerman for concealing or destroying the evidence that was the subject of the grand jury subpoena. Thus, Appellants are entitled to a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[30]

## V. CONCLUSION

For the foregoing reasons, we reverse the District Court's decision denying Appellants' motion for judgment on the pleadings.[31]

---

[30] Zimmerman asks this Court to issue appropriate sanctions against Appellants. We find no need to discuss or impose sanctions.

[31] Because we conclude that Appellants had probable cause to initiate this prosecution, we need not address Zimmerman's remaining arguments since he cannot establish the underlying claim of malicious prosecution.