**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1896
_____

CHARLES SIMONSON,
Appellant

v.

BOROUGH OF TAYLOR; WILLIAM ROCHE

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-18-cv-02445)
District Judge:  Honorable Malachy E. Mannion
_____

Submitted under Third Circuit L.A.R. 34.1(a)
December 15, 2020
_____

Before: GREENAWAY, JR., SHWARTZ, and FUENTES, Circuit Judges.

(Filed: December 28, 2020 )
_____

OPINION*
_____

SHWARTZ, Circuit Judge.

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Plaintiff Charles Simonson brought claims under 42 U.S.C. § 1983 against Defendants Sergeant William Roche and the Borough of Taylor arising from his arrest and the seizure of his car. Because probable cause supported Simonson's arrest and the vehicle's impoundment, the District Court properly granted summary judgment for Defendants, and we will affirm.

I

A

Loretta Simonson told her doctor that Simonson, her estranged husband, attempted to shoot her. Based on this information, the Taylor Borough Police Department went to her home to conduct a welfare check. Loretta initially denied that a shooting occurred, but then told the police that Simonson had entered the home several days earlier, shouted "die bitch," fired at her head with a shotgun, ran outside, threw the gun into his car, and drove away. App. 135. Loretta explained that the bullet struck the wall above the bed and pellets struck her head. The officers observed an apparent bullet hole in the bedroom wall and an injury to Loretta's nose.

At the police station, Loretta prepared a written statement detailing the event. In addition, a trauma psychologist interviewed Loretta and told law enforcement that Loretta showed signs of being a domestic violence victim.

The Police Chief assigned Sergeant Roche to present these facts to the First Assistant District Attorney, who approved charging Simonson with: attempted homicide, 18 Pa. Cons. Stat. § 901(a); aggravated assault, 18 Pa. Cons. Stat. § 2702(a)(1); discharge of a firearm into an occupied structure, 18 Pa. Cons. Stat. § 2707.1(a); possession of a

weapon for an unlawful purpose, 18 Pa. Cons. Stat. § 907(b); prohibited use of an offensive weapon, 18 Pa. Cons. Stat. § 908(a); terroristic threats with intent to terrorize another, 18 Pa. Cons. Stat. § 2706(a)(1); recklessly endangering another person, 18 Pa. Cons. Stat. § 2705; and simple assault, 18 Pa. Cons. Stat. § 2701(a)(1).  The affidavit in support of the charges did not mention that Loretta initially told the officers that nothing happened.

Law enforcement from Throop Township arrested Simonson.[1]  Sergeant Roche met Simonson at the Throop jail, remarked "so we meet again,"[2] App. 636, handcuffed him, and transported him to the Taylor Borough Police Department.  Law enforcement also seized Simonson's car pending a warrant to search it for evidence.  The Police Chief also held a press conference to announce the arrest, which was then reported in the news. Simonson maintained his innocence throughout the process.

The next day, Loretta's neighbor Leilani Raguckas told the officers that she heard a gunshot on the date on which Loretta claimed Simonson shot at her, but  that Loretta later told Raguckas that her cat knocked the gun over and it discharged, and that Loretta gave the shotgun to Raguckas's daughter's boyfriend.  As a result of this new information, law enforcement re-interviewed Loretta.  During the interview, she admitted that on the night of the purported incident, Simonson was not at her house and she

---

[1] Simonson was arrested without a warrant under Pennsylvania law.  See 18 Pa. Cons. Stat. § 2711(a) ("A police officer shall have the same right of arrest without a warrant as in a felony whenever he has probable cause to believe the defendant has violated" enumerated crimes, including aggravated assault, "against a family or household member.").

[2] Sergeant Roche had arrested Simonson in August 2018 for a domestic incident.

3

accidentally fired the shotgun. Simonson was then released from prison, his car was returned to him, and the charges were dismissed.

B

Simonson filed a complaint against Defendants under 42 U.S.C. § 1983 alleging: (1) Roche engaged in (a) an unlawful search and seizure of his person under the Fourth and Fourteenth Amendments, (b) malicious prosecution under the Fourth Amendment, (c) false arrest and false imprisonment under the Fourth Amendment, and (d) assault and battery; (2) the Borough of Taylor inadequately trained and supervised the officers in violation of Simonson's constitutional rights; and (3) both Defendants engaged in (a) a stigma-plus violation of due process, (b) an unlawful search and seizure of Simonson's car under the Fourth Amendment, and (c) false light and defamation.

After discovery, Defendants moved for summary judgment. The District Court granted the motion, concluding that (1) Simonson's Fourth Amendment claims against Roche for unlawful search and seizure, malicious prosecution, and false arrest and imprisonment failed because the charges were supported by probable cause; (2) Simonson's due process claim failed because he was not deprived of an additional right or interest; (3) Simonson's municipal liability claim failed because no individual municipal employee violated his Constitutional rights; and (4) Simonson's Fourth Amendment claim regarding his car's impoundment failed because probable cause existed to seize the car to look for the shotgun allegedly used to shoot at Loretta. Simonson v. Borough of Taylor, No. 3:18-2445, 2020 WL 1505572, at *10, *12, *14 (M.D. Pa. Mar. 30, 2020). The Court declined to exercise supplemental jurisdiction over

4

the state law claims and dismissed them without prejudice.[3]  Id. at *14.  Simonson

appeals.

II[4]

To state a claim for relief under § 1983, "a plaintiff must demonstrate the

defendant, acting under color of state law, deprived him or her of a right secured by the

Constitution or the laws of the United States."  Kaucher v. Cnty. of Bucks, 455 F.3d 418,

423 (3d Cir. 2006).  Accordingly, to evaluate Simonson's claims in the context of a

motion for summary judgment, we must determine whether there are disputed issues of

material fact that, if found for Simonson, would show he was deprived of a constitutional

right.  See id.  As explained below, Simonson has not shown that Defendants violated his

rights.

A

Simonson brings three Fourth Amendment claims against Roche: unlawful search

and seizure, malicious prosecution, and false arrest and imprisonment.  All three claims

require Simonson to establish that Roche lacked probable cause to believe that Simonson

committed a crime.  See James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012)

("To state a claim for false arrest under the Fourth Amendment, a plaintiff must

---

[3] Simonson does not challenge the dismissal of his Fourteenth Amendment claims under the "more-specific provision rule," Simonson, 2020 WL 1505572, at *7 (citing Albright v. Oliver, 510 U.S. 266, 273 (1994)), or his state law claims.

[4] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343(a), and 1367. We have jurisdiction under 28 U.S.C. § 1291.  We review de novo a district court's order granting summary judgment.  Andrews v. Scuilli, 853 F.3d 690, 696 (3d Cir. 2017). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

5

establish . . . that the arrest was made without probable cause."); Zimmerman v. Corbett, 873 F.3d 414, 418 (3d Cir. 2017) ("To prevail on [a] malicious prosecution claim under § 1983, [a plaintiff] must establish that . . . the defendant[s] initiated the proceeding without probable cause." (third alteration in original) (citation omitted)); Paff v. Kaltenbach, 204 F.3d 425, 435 (3d Cir. 2000) ("The Fourth Amendment prohibits a police officer from arresting a citizen without probable cause.").  Because these claims "hinge on probable cause, the constitutional violation question in this case turns on whether a reasonable officer could have believed that probable cause existed to arrest the plaintiff at that time."  Andrews v. Scuilli, 853 F.3d 690, 697 (3d Cir. 2017) (citations and internal quotation marks omitted).

Probable cause exists if, "at the moment the arrest was made[,] . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense."  Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) (alterations in original) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).  Probable cause "does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt," Zimmerman, 873 F.3d at 418 (quoting Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995)), or "that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate," Dempsey v. Bucknell Univ., 834 F.3d 457, 467 (3d Cir. 2016) (citation omitted).  We cannot, however, "exclude from the probable cause analysis unfavorable

6

facts an officer otherwise would have been able to consider."[5] Andrews, 853 F.3d at 698 (citation omitted). "Instead, we view all such facts and assess whether any reasonable jury could conclude that those facts, considered in their totality in the light most favorable to the nonmoving party, did not demonstrate a 'fair probability' that a crime occurred." Id. (citation omitted).

"Whether any particular set of facts suggest that an arrest is justified by probable cause requires an examination of the elements of the crime at issue." Wright, 409 F.3d at 602. Simonson was charged with, among other things, aggravated assault. Under Pennsylvania law, "[a] person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa. Cons. Stat. § 2702(a)(1). Aggravated assault requires a degree of culpability that "considers and then disregards the threat necessarily posed to human life by the offending conduct" and "the offensive act must be performed under circumstances which almost assure that injury or death will ensue." Commonwealth v. O'Hanlon, 653 A.2d 616, 618 (Pa. 1995) (emphasis omitted).

Based on Loretta's statements and the police officers' observations at her home, there was probable cause to believe that Simonson "attempt[ed] to cause serious bodily

---

[5] "While it is axiomatic that at the summary judgment stage, we view the facts in the light most favorable to the nonmoving party, it does not follow that we exclude from the probable cause analysis unfavorable facts an officer otherwise would have been able to consider." Dempsey, 834 F.3d at 468. "Thus, where the question is one of probable cause, the summary judgment standard must tolerate conflicting evidence to the extent it is permitted by the probable cause standard." Id.

injury" to Loretta, 18 Pa. Cons. Stat. § 2702(a)(1), that Simonson "disregard[ed] the threat . . . posed to [Loretta's] life" by shooting at her, and that his act of shooting at Loretta "almost assure[d] that injury or death [would] ensue," O'Hanlon, 653 A.2d at 618. The affidavit of probable cause stated that: (1) the Taylor Police Department received a request for a welfare check because Loretta told her doctor that Simonson fired a shotgun at her; (2) Loretta told the officers that Simonson said, "die bitch," then fired one blast toward her in bed; (3) the officers observed evidence consistent with the discharge of a firearm inside the bedroom; and (4) the officers observed an injury to Loretta's nose. App. 149. Therefore, the affidavit contained facts providing a basis for a reasonable person to believe that Simonson attempted to cause serious bodily injury to Loretta, disregarded the threat to her life, and almost assured that injury or death would ensue.

None of the facts that Simonson identified undermine the existence of probable cause. That Loretta did not report the incident for five days and initially denied that anything occurred does not detract from what the officers saw or their actions based on the details she provided.[6] Because probable cause existed to arrest Simonson for aggravated assault, he cannot establish that he was unlawfully seized, maliciously

---

[6] When the Police Chief assigned Roche to present the case to the District Attorney, he knew that Loretta had met with a trauma psychologist who found Lorretta's behavior consistent with a domestic violence victim. In addition, the First Assistant District Attorney who approved the charges knew that many domestic violence victims "are afraid to report domestic violence" because they fear "retribution," App. 343. Thus, law enforcement understood Loretta's delayed report and initial denial as a common reaction of a domestic violence victim.

prosecuted, or falsely arrested and imprisoned. Accordingly, he cannot show that Roche's conduct violated the Fourth Amendment, and the District Court thus properly dismissed the § 1983 claim against him.[7]

## B

The District Court also correctly granted summary judgment for Defendants on Simonson's due process claim. Simonson contends that his reputation was harmed following news stories about his arrest, and that the harm constituted a due process violation. However, "reputation alone is not an interest protected by the Due Process Clause." Dee v. Borough of Dumore, 549 F.3d 225, 233 (3d Cir. 2008) (emphasis

---

[7] Because all of Simonson's crimes were simultaneously charged and arose from the same incident, we need not individually analyze the probable cause for the remaining offenses. See Wright, 409 F.3d at 604 ("Even though our discussion of probable cause was limited to [one of many charges], it disposes of [plaintiff's remaining Fourth Amendment claims] with respect to all of the charges brought against her."); see also Johnson v. Knorr, 477 F.3d 75, 84 (3d Cir. 2007) ("[T]here is a distinction on the one hand between a simultaneous arrest on multiple charges where, in a sense the significance of the charges for which there was not probable cause for arrest is limited as the plaintiff in the ensuing civil action could have been lawfully arrested and thus seized on at least one charge and, on the other hand, prosecution for multiple charges where the additional charges for which probable cause is absent almost surely will place an additional burden on the defendant.").

In any event, there is probable cause for all the charges. As discussed above, based on Loretta's statements and their observations, the officers had evidence that Simonson attempted to cause serious harm to Loretta by firing a shotgun toward her, see 18 Pa. Cons. Stat. §§ 901(a) (criminal attempt), 2701(a)(1) (simple assault), 2705 (recklessly endangering another person); the bullet struck the bedroom wall, see id. § 2707.1(a) (discharge of a firearm into an occupied structure); Simonson possessed a shotgun and intended to use it to injure Loretta, see id. §§ 907(b) (possession of a firearm with intent to employ it criminally), 908(a) (prohibited use of offensive weapons by making repairs to, selling, using, or possessing an offensive weapon); and Simonson threatened Loretta by pointing a shotgun at her and saying, "die bitch," App. 149; see 18 Pa. Cons. Stat. § 2706(a)(1) (commission of a crime of violence with intent to terrorize another).

omitted) (citations omitted). Rather, "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest" guaranteed by the Constitution or state law. Id. at 233-34 (emphasis omitted) (citation omitted); see also Clark v. Township. of Falls, 890 F.2d 611, 619 (3d Cir. 1989) ("[D]efamation is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution.").

Simonson argues that because there was no probable cause for his arrest, he established the "plus" factor. As explained above, however, the officers had probable cause to arrest, prosecute, and imprison Simonson. Accordingly, he failed to "show a . . . deprivation of some additional right or interest." Dee, 549 F.3d at 233-34. Thus, Defendants were entitled to summary judgment on Simonson's stigma-plus due process claim.

C

Simonson's claim that Defendants unlawfully seized and impounded his vehicle without a warrant or probable cause also fails. The automobile exception to the warrant requirement permits law enforcement to search and seize a vehicle without a warrant if there is "probable cause to believe that the vehicle contains evidence of a crime." United States v. Donahue, 764 F.3d 293, 299-300 (3d Cir. 2014) (citation omitted).

The officers here had probable cause to believe that Simonson's car contained evidence of a crime. They seized Simonson's vehicle after Loretta told them that, after Simonson shot at Loretta and exited their home, he "thr[e]w the shotgun in a red car" and

10

"drove off." App. 769. Loretta's statement, corroborated by the bullet hole in the wall near her bed, established probable cause to believe that the shotgun could still be in Simonson's car. Accordingly, the District Court properly concluded that probable cause supported the vehicle's seizure and impoundment, and thus no Fourth Amendment violation occurred.[8]

## III

For the foregoing reasons, we will affirm the District Court's order granting summary judgment for Defendants.

---

[8] Simonson waived his municipal liability claim because he failed to raise it on appeal. United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005). Even if Simonson did not waive the claim, it would fail because he did not establish a constitutional deprivation. Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 791 (3d Cir. 2000).