**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3094
_____

LAURA EATON,
　　　　　　　　Appellant

v.

RICHARD P. FIGASKI; JOHN GROH; MICHAEL TESORE; ROBERT J. BUCKO;
LESLEY MITCHELL;  and MILLCREEK TOWNSHIP
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 1:16-cv-279)
District Judge: Honorable Susan Paradise Baxter
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
November 18, 2022
_____

Before: HARDIMAN, PORTER, and FISHER
*Circuit Judges*.

(Filed: December 21, 2022)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not
binding precedent.

PORTER, *Circuit Judge.*

Laura Eaton sued Millcreek Township, two township supervisors, and members of its police force for retaliatory prosecution, malicious prosecution, and general conspiracy. She claimed that police charged her with theft, receiving stolen property, and criminal trespass in retaliation for her criticism of the township's actions. The District Court granted summary judgment for the township and its personnel because police had probable cause to charge Eaton with receiving stolen property. We will affirm.

I

A

Laura Eaton was the executive director of MECA, Inc., a Pennsylvania nonprofit corporation. In 2013, MECA and Millcreek Township entered into a written agreement for MECA to operate the Just Older Youth (JOY) Center for seniors. Eaton was MECA's signatory.

Per the agreement, Millcreek Township provided part of a United States Postal Service building, which it had leased, to be used for the JOY Center and subleased six onsite offices to MECA for its own operations. Both the township and MECA contributed property for use by the JOY Center. Millcreek Township retained the right to terminate the agreement without cause on ninety days' notice.

Millcreek Township exercised the termination clause on May 28, 2014, and the JOY Center closed on August 27. MECA invoked its right under the agreement to remain in the six onsite offices for an additional year.

Following the closure, some of Millcreek Township's personal property—170 folding chairs, twelve tables, two end tables, a sofa, a loveseat, a projector, an amplifier, and a microphone—went missing from the JOY Center. The affidavit of probable cause assessed their value at $6,037.80. Millcreek Township and Township Supervisor Richard Figaski sought to secure the property's return by speaking directly with Eaton and MECA's attorney but failed. So Millcreek Township reported the missing items to the police.

Police Officer Robert Bucko and a second officer investigated. They interviewed Eaton, who denied knowing of the missing property's whereabouts, and spoke with MECA's attorney. Millcreek Township's property reappeared at the JOY Center premises a month later. Police nonetheless filed criminal charges against Eaton for criminal trespass, theft by unlawful taking, and receiving stolen property. When the Erie County District Attorney learned of the charges, he ordered them withdrawn believing it would be too difficult to get a conviction in what "would appear to be an argument between senior citizens and Millcreek Township about who owned tables and chairs and television sets." Suppl. App. 341.

B

In 2016, Eaton sued Millcreek Township, Figaski, Bucko, Township Supervisor John Groh, and Police Chief Michael Tesore in federal court for malicious prosecution, retaliatory prosecution, and abuse of power under 42 U.S.C. § 1983 and malicious prosecution and abuse of process under state law. She also asserted a § 1983 claim against the township. Eaton alleged she was criminally charged without probable cause in

3

retaliation for publicly criticizing Figaski and Groh and their decision to close the JOY Center.

After nearly four years of litigation, the District Court granted summary judgment for the Defendants on the following claims: malicious prosecution, retaliatory prosecution, and general conspiracy under 42 U.S.C. § 1983 and malicious prosecution under state law against the individual defendants. The District Court held that Eaton did not prove either malicious or retaliatory prosecution because police had probable cause to charge her with receiving stolen property. Without an underlying deprivation of rights, her § 1983 claim against the township and her conspiracy claims failed as well.

Eaton timely appealed.

## II

The District Court had federal question subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 and supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367. This Court has jurisdiction under 28 U.S.C. § 1291.

"We review [a] grant of summary judgment de novo and draw all reasonable inferences in favor of the nonmoving party." *Downey v. Dep't of Corr.*, 968 F.3d 299, 304 (3d Cir. 2020) (internal quotations omitted). To succeed, the movants must show "that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]e may affirm the judgment on any grounds supported by the record." *Downey*, 968 F.3d at 309.

## III

Eaton argues that the District Court misapplied the elements of receiving stolen property when it found that "intent to deprive" is not an element of the offense under 18 Pa. Const. Stat. § 3925. Eaton is correct. But the police nonetheless had probable cause to charge her with theft, receiving stolen property and criminal trespass, so we will affirm.

## A

To sustain her claims of malicious prosecution and retaliatory prosecution, Eaton must prove that criminal proceedings were initiated without probable cause. *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017); *Miller v. Mitchell*, 598 F.3d 139, 154 (3d Cir. 2010). Police have probable cause when "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that" a crime had been committed. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). It "requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." *Zimmerman*, 873 F.3d at 418 (internal quotations omitted).

For Defendants to succeed on summary judgment, the District Court explained that "[p]robable cause need only exist as to <u>any</u> offense that could be charged under the factual circumstances." App. 12 (citing *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994). Eaton does not challenge this holding on appeal.

We recognize that *Barna* does not apply to claims of malicious or retaliatory prosecution. In *Wright v. City of Philadelphia*, we found that probable cause supported one of several criminal charges against the plaintiff. That determination was sufficient to

dispose of both her § 1983 claims for false arrest and "her malicious prosecution claims with respect to all of the charges brought against her." 409 F.3d 595, 604 (3d Cir. 2005) (involving criminal charges of criminal trespass, burglary, theft, and criminal mischief). Later, in *Johnson v. Knorr*, we explained that defendants suing under § 1983 were "not necessarily insulated in a malicious prosecution case merely because the prosecution of one of the charges was justified." 477 F.3d 75, 85 (3d Cir. 2007). We clarified that *Wright* applies to false arrest and related malicious prosecution claims "where the circumstances leading to the arrest and prosecution were totally intertwined." *Id.* at 82 n.9. Here, the arrest and institution of criminal proceedings appear intertwined. So we need not resolve whether this case falls within the narrow confines to which *Johnson* relegated *Wright* because the undisputed facts show probable cause supports each charge: theft by unlawful taking, receiving stolen property, and criminal trespass.

1

The District Court found that police did not have probable cause to charge Eaton with theft by unlawful taking. It incorrectly concluded that Eaton could not have had the intent to deprive Millcreek of possession because the property was returned. But the relevant intent is the intent at the time of taking. *See* 2 Wharton's Criminal Law § 26:9 (16th ed. 2022) ("To constitute larceny, the intent to steal must exist at the time of the initial taking."). So the police had probable cause to charge Eaton with theft by unlawful taking because it was reasonable for them to believe that Eaton took control of Millcreek's property with the concurrent intent to permanently deprive the township of possession.

6

Under Pennsylvania law, "[a] person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa. Cons. Stat. § 3921(a). "To deprive" means "[t]o withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value." *Id.* § 3901. The offense consists of three elements: "(1) unlawful taking or unlawful control over movable property; (2) movable property belongs to another; and (3) intent to deprive (permanently)." *Commonwealth v. Young*, 35 A.3d 54, 62 (Pa. Super. Ct. 2011) (internal quotations omitted). Once property has been stolen, a person cannot relieve herself of criminal liability by returning the stolen property. *See Commonwealth v. Diamond*, 79 Pa. Super. 54, 59 (Pa. Super. Ct. 1922) ("When a thief is caught with the goods which he has carried away and surrenders the possession to the owner, he does not thereupon become not guilty of the larceny."); *Commonwealth ex rel. Lagana v. Office of Att'y Gen.*, 662 A.2d 1127, 1129–30 (Pa. Super. Ct. 1995) (finding that the return of stolen funds did not nullify criminal intent when the defendant only returned them because he was ordered to do so by the state ethics committee).

Based on the undisputed facts, police had probable cause to charge Eaton with theft by unlawful taking because it was reasonable for them to believe that Eaton took control of the missing property with the concurrent intent to permanently deprive Millcreek of possession. The property went missing, Eaton had access to the building where the property was before it went missing, and a witness identified Eaton as the one directing the removal of the property. It was reasonable for police to believe that Eaton intended to permanently deprive Millcreek of possession at the moment of taking.

7

Because police had probable cause to charge Eaton with theft by unlawful taking, she cannot demonstrate a claim of malicious or retaliatory prosecution for this offense.

2

The District Court held that police had probable cause to charge Eaton with receiving stolen property. We agree, but we clarify that intent to deprive is also an element of this offense under Pennsylvania law. And the police had probable cause to charge Eaton with receiving stolen property because it was reasonable for them to believe that Eaton accepted stolen property, knowing it was stolen, with the intent to permanently deprive Millcreek of possession.

Under Pennsylvania law, "A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa. Cons. Stat. § 3925(a). The offense consists of three elements: "(1) intentionally acquiring possession of the movable property of another; (2) with knowledge or belief that it was probably stolen; and (3) the intent to deprive permanently." *Commonwealth v. Robinson*, 128 A.3d 261, 265 (Pa. Super. Ct. 2015) (citing *Commonwealth v. Nero*, 58 A.3d 802, 807 (Pa. Super. Ct. 2012)). As at common law, the requisite mens rea is the "intent to deprive." *See* 3 Wayne R. LaFave, Substantive Criminal Law § 20.2(e)(3d ed. 2022) ("The necessary intent [for receiving stolen property], as in the related crime of larceny, is an intent to deprive the owner of his property.").

Based on the undisputed facts, the police had probable cause to charge Eaton with receiving stolen property because it was reasonable for them to believe that all three elements of the crime were satisfied. Witnesses identified Eaton as the person arranging for transportation of Millcreek's property to a flower shop on State Street. Eaton owned a flower shop on State Street. And as the MECA signatory to the JOY Center agreement, Eaton knew that Millcreek owned the property. Similar to the theft charge, it was reasonable for police to believe that Eaton had the intent to permanently deprive Millcreek of possession at the moment she received the stolen property.

Because police had probable cause to charge Eaton with receiving stolen property, she cannot demonstrate a claim of malicious or retaliatory prosecution with this offense.

3

The District Court did not consider whether police had probable cause to charge Eaton with criminal trespass. We hold that they did because it was reasonable for them to believe that she was on Millcreek's property and knew that she was not permitted to be there.

Under Pennsylvania law, a person commits criminal trespass if he enters or breaks into "any building or occupied structure or separately secured or occupied portion thereof" while "knowing that he is not licensed or privileged to do so." 18 Pa. Cons. Stat. § 3503(a)(1). "[C]riminal trespass merely requires proof of scienter, in other words, that the defendant had knowledge of a lack of license or privilege to enter." *Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005).

Based on the undisputed facts, the police had probable cause to charge Eaton with criminal trespass. By her own admission, Eaton accessed the JOY Center premises after the program ended on at least one occasion when she encountered Figaski. And as MECA's signatory to the JOY Center agreement, it was reasonable for police to believe that Eaton knew that these premises belonged to Millcreek and that she was not privileged to be there.

Police had probable cause to charge Eaton with theft by unlawful taking, receiving stolen property, and criminal trespass. So she cannot establish any claims of malicious or retaliatory prosecution.

B

Millcreek Township cannot be held liable under § 1983 because Eaton failed to prove any constitutional injury.

A municipality "can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 690 (1978). But a municipality cannot be held liable under § 1983 when "a person has suffered no constitutional injury at the hands of the individual police officer[s]." *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986); *see also Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 124 (3d Cir. 2003) ("There cannot be an award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm.") (internal quotations omitted).

10

Because Eaton failed to prove that she was injured by retaliatory or malicious prosecution, Millcreek is not liable under 42 U.S.C. § 1983.

## C

For a similar reason, Eaton's general conspiracy claim under § 1983 also fails. "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293–94 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150–52 (1970). Because Eaton did not suffer a deprivation of constitutional rights, she cannot sustain her claim of general conspiracy.

## IV

For the reasons stated above, we will affirm the District Court.