**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2900
_____

A.J.,
Appellant

v.

MASTERY CHARTER HIGH SCHOOL; MASTERY CHARTER SCHOOL
PASTORIUS-RICHARDSON ELEMENTARY, f/k/a FRANCIS D. PASTORIUS-
MASTERY CHARTER SCHOOL; SCOTT GORDON, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITIES; HILLARY MESERVE, IN HER OFFICIAL AND
INDIVIDUAL CAPACITIES; ERIC LANGSTON, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITIES; MICHAEL PATRON, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITIES
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cv-01458)
District Judge: Honorable R. Barclay Surrick
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on June 21, 2023

Before: BIBAS, MATEY, and FREEMAN, *Circuit Judges*

(Opinion filed: September 20, 2023)

OPINION[*]

FREEMAN, *Circuit Judge*.

A.J. sued her school and various school officials for federal civil rights and state law violations after an alleged incident of sexual assault by another student. The District Court entered judgment for the defendants on all claims. We will affirm.

## I.

## A.

This case arises from an incident that occurred when A.J. was a thirteen-year-old seventh-grade student attending Mastery Charter School Pastorius-Richardson Elementary (the "School"). On May 27, 2016, A.J. entered the School's empty auditorium during her lunch break. She was observing Ramadan and looking for an unoccupied room where she could pray. She had not told anyone where she was going, and she does not think anyone saw her go in. After several minutes, R.H., a male eighth-grader, entered the auditorium. A.J. and R.H. then had an encounter during which they had sexual intercourse. R.H. videorecorded part of the encounter on his cell phone without A.J.'s knowledge.

A.J. told no one about the incident. For almost two weeks, School officials knew no details about it, though they heard vague rumors that students had engaged in prohibited activity on School property. Then, on June 9, 2016, a student brought R.H.'s illicit video

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

to Assistant Principal Eric Langston. The student had the video on her cell phone and told Langston that she had seen it on R.H.'s phone and sent it to herself. Langston promptly took the video to Principal Hillary Meserve and deleted it from the student's phone.

That same day, Langston called the police and summoned A.J.'s guardians and R.H.'s father to the School. Before the families arrived, he pulled A.J. and R.H. from class and brought them to separate rooms where each wrote a statement explaining their respective version of what took place on May 27. A.J. wrote:

> I was in there about to pray when [R.H.] came in their and he said want to hit but I said no then he just kept on so then I said I can't I never did this before and he said it's ok so then he pulled my dress up and pulled my under wear down a little and I was scared to do it but I did it anyway and he pulled his thing out and tryed to put it in me and I said it hurt so he stopped and he left. We was in the auditorium. And I did not know he was recording me. This happened three weeks ago on a Friday.

App. 38. R.H. wrote that A.J. "told me she wanted to [have sex] . . . I put it in her and she told me it hurt. I pulled out stop recording . . . ." App. 1016. Langston reviewed both statements and noticed that A.J.'s statement was inconsistent with the video, which showed A.J. and R.H. "actually having" sexual intercourse. App. 564.

When the families arrived at the School, Langston held a meeting to address the incident and discuss consequences. Present were A.J., her grandmother and aunt, R.H., his father, and two police officers. During the meeting, A.J. stated that the incident "was [her] fault," and reported that she "said no [to R.H.] at first but then [she] said okay." App. 365; *see also* App. 254–55. Her grandmother told the officers she did not want to press charges. Langston and Meserve ultimately determined that the encounter was consensual. In accordance with the School's disciplinary policy prohibiting sexual acts on campus, both

3

students were suspended for the remaining eight days of the school year, and R.H. lost his graduation privileges.

That afternoon, A.J. went to Children's Hospital of Philadelphia to be assessed for abdominal pain. The medical records state that A.J.'s symptoms came on "after having sexual intercourse- consensual," App. 1032, 1035, and note "[n]o concern for rape, no trauma," App. 1036. At a follow-up visit on June 13, 2016, the provider note states: "[Patient] affirms sexual encounter was consensual, was not forced; is feeling regrets for having done so and upsetting her [grandmother] . . . ." App. 1081.

In a 2021 deposition, A.J. testified that she made false statements during the June 9 meeting with School officials.

**B.**

The School is managed by Defendant Mastery Charter High School ("Mastery"), a nonprofit corporation that owns and operates twenty-four charter schools. Mastery began operating the School in 2013 to replace an academically struggling elementary school operated by the School District of Philadelphia.

Between January 1, 2013 and May 27, 2016 (the date of the incident involving A.J. and R.H.), there were approximately twenty documented instances of sexual misbehavior by students at the School in grades three through twelve. The reports generally describe inappropriate gestures, touching, or verbal statements that occurred in supervised settings such as recess or during class. There were no reported incidents of students engaging in sexual intercourse. One incident of alleged non-consensual oral sex was reported *after* the incident involving A.J. and R.H. occurred. Mastery does not have records of incidents

4

predating 2013, as it did not receive historical discipline records when it took over the School.

There were no reported incidents involving A.J. and R.H. before May 27, 2016. After the May 27 incident, but before Langston saw R.H.'s videorecording of the incident, Langston saw school surveillance footage of R.H. entering an unsupervised classroom that A.J. sometimes used for prayer. The recording captured the two students leaving the classroom together. Langston spoke to the students about what he saw, and both A.J. and R.H. denied engaging in sexual activity, but R.H. admitted making a sexual comment to A.J. Langston reported this incident to the students' guardians.

## C.

In November 2016, A.J. filed a complaint with the Department of Education Office for Civil Rights ("OCR")[1] claiming that the School "discriminated against [her] on the basis of sex by failing to appropriately respond to a May 2016 complaint that [she] was sexually assaulted at the [School]." [2] App. 1132. OCR then conducted an investigation.

In its final Investigation Report, OCR set forth narrative findings explaining that, although some of the School's policies and procedures were not Title IX–compliant, the School's investigation of the May 27 incident was "prompt and equitable." App. 1148. It noted that the School "determined that the encounter was consensual and as such, did not

---

[1] OCR is responsible for enforcing, among other antidiscrimination statutes, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and its implementing regulation, 34 C.F.R. Part 106.

[2] A.J. alleged in her amended complaint that Langston learned of R.H.'s video on May 27, 2016 but did not inform A.J.'s guardians until June 9, 2016. Following discovery, the parties now agree that Langston learned of the video on June 9, 2016.

constitute sexual harassment or sexual violence." App. 1147–48. OCR did not challenge that determination. The School entered a Resolution Agreement with OCR to remedy its noncompliant policies and procedures.

In 2019, A.J. sued the School, Mastery, Mastery CEO Scott Gordon, Mastery Director of Compliance Michael Patron, Meserve, and Langston for damages arising from their handling of the May 27 incident. In her amended complaint, she raised claims under (1) Title IX for discrimination on the basis of sex (brought against the School and Mastery only); (2) 42 U.S.C. § 1983, based on a Fourteenth Amendment violation; and (3) Pennsylvania law for intentional infliction of emotional distress and breach of fiduciary duty.

Defendants moved for judgment on the pleadings. On May 22, 2020, the District Court granted their motion with respect to the § 1983 claim only. Following discovery, the Court granted Defendants' motion for summary judgment on all remaining claims. A.J. timely appealed. She challenges (1) the judgment on the pleadings for Defendants on the § 1983 claim; (2) the grant of summary judgment for Defendants on the remaining claims; and (3) the denial of two of her discovery motions.

## II.

The District Court had jurisdiction over A.J.'s federal claims under 28 U.S.C. § 1331 and exercised supplemental jurisdiction over her state law claims under 28 U.S.C. § 1367. We have jurisdiction under 28 U.S.C. § 1291.

6

**A.**

We exercise plenary review over the grant or denial of a motion for judgment on the pleadings. *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011) (per curiam). Where, as here, the sufficiency of a complaint is challenged under Federal Rule of Civil Procedure 12(c), courts apply the same standard they apply to evaluate motions to dismiss for failure to state a claim under Rule 12(b)(6). *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991). Thus, in reviewing a motion for judgment on the pleadings, we must accept all of the nonmovant's allegations in the complaint as true and draw all reasonable inferences in her favor. *Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017). To prevail, the movants must establish that there are no material issues of fact and that they are entitled to judgment as a matter of law. *Id.* at 417.

A.J. premised her § 1983 claim on a "right, guaranteed by the Fourteenth Amendment[,] . . . to be free from sexual discrimination, harassment and assault." App. 62. She asserted that Defendants violated this right by "fail[ing] to take reasonable and appropriate measures . . . to prevent . . . incidents of sexual discrimination, harassment and assault." App. 63. She alleged that they were on "notice of previous incidents" yet "created and maintained" inadequate policies and systems to address and prevent sexual harassment, which "lead [sic] to the sexual discrimination and assault" she suffered. App. 63–64.

We agree with the District Court that this claim fails because A.J. did not allege a plausible constitutional violation. In general, the Due Process Clause serves to "protect the people from the State, not to ensure that the State protect[s] [people] from each other." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). This holds

7

true in an educational setting: "public schools, as a general matter, do not have a *constitutional* duty to protect students from private actors," including other students. *Morrow v. Balaski*, 719 F.3d 160, 170 (3d Cir. 2013) (en banc).

There is a narrow exception to the above rule: the state-created danger doctrine, which allows "liability [to] attach where the state acts to *create* or *enhance* a danger that deprives the plaintiff of his or her" constitutional rights. *Id.* at 177. There are four elements to a state-created danger claim. *Id.* Here, our analysis begins and ends with the fourth element, which requires the plaintiff to establish that "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Id.* (citation omitted).

A.J. did not plausibly plead that Defendants affirmatively used their authority to place her in greater danger than she would have been in otherwise. Instead, taken as true and viewed in the light most favorable to her, A.J.'s allegations suggest that Defendants failed to implement systems sufficient to prevent the May 27 incident. *See, e.g.*, App. 63, 64 (asserting that Defendants "created and maintained" inadequate policies and systems). But "merely restating the Defendants' inaction as an affirmative failure to act does not alter the passive nature of the alleged conduct." *Morrow*, 719 F.3d at 179; *see also L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 242–44 (3d Cir. 2016). So A.J. did not allege a plausible Fourteenth Amendment violation.

**B.**

Our review is plenary when we evaluate a district court's grant or denial of summary judgment. *Ellis v. Westinghouse Elec. Co.*, 11 F.4th 221, 229 (3d Cir. 2021). We consider

8

the whole record to assess whether the moving party has shown there are no genuine disputes of material fact and they are entitled to judgment as a matter of law. *Id.* at 229–30.

**1.**

We begin with A.J.'s Title IX claim against Mastery and the School. Under Title IX, "recipients of federal funding may be liable for 'subjecting' their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 646–47 (1999) (alteration omitted). They will be deemed deliberately indifferent where their response to known harassment is "clearly unreasonable." *Id.* at 648; *Hall v. Millersville Univ.*, 22 F.4th 397, 410 (3d Cir. 2022).

The record does not support a finding that Defendants had notice that A.J. was at risk of sexual violence before the incident. There were no reported incidents involving A.J. or R.H. before May 27, 2016. It was *after* May 27 that the school learned A.J. and R.H. had been together in an unsupervised classroom and that R.H. had made sexual comments to A.J. And the only unrelated report of non-consensual sex between other students also postdates the May 27 incident. Taken as a whole, the reports of sexual misbehavior at the School between January 1, 2013 and May 27, 2016 do not show a pattern of behavior "so severe, pervasive, and objectively offensive" sufficient to put Defendants on notice that A.J. was at risk of sexual violence. *Davis*, 526 U.S. at 652.

Defendants' response to the May 27 incident does not demonstrate deliberate indifference either. Langston and Meserve immediately investigated the incident, giving

9

A.J. and R.H. the opportunity to provide independent statements of what happened, and then meeting with their families and the police. Based on the information available to them at the time, their response was "not clearly unreasonable." *Id.* at 649.

A.J. also contends that Mastery's failure to implement and adhere to Title IX policies proves deliberate indifference. But a school's failure to comply with administrative requirements does not itself establish deliberate indifference. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291–92 (1998).

Because no reasonable jury could find that Mastery or the School acted with deliberate indifference to known acts of harassment, they were entitled to summary judgment on A.J.'s Title IX claim.

**2.**

We next consider A.J.'s state law claims for intentional infliction of emotional distress ("IIED") and breach of fiduciary duty.

Under Pennsylvania law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Hoy v. Angelone*, 720 A.2d 745, 753 (Pa. 1998) (citation omitted). "[T]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* at 754 (citation omitted).

Following from our Title IX analysis above, we hold that Defendants are entitled to summary judgment on this claim. That is, for the same reasons that the record does not support a finding of deliberate indifference, it similarly does not show that Defendants'

10

conduct was outrageous and extreme. Nor has A.J. shown that Defendants acted intentionally or recklessly. So no reasonable jury could conclude from the available evidence that Defendants' conduct was beyond all possible bounds of decency.

Turning to breach of fiduciary duty, to succeed a plaintiff must prove (1) the existence of a fiduciary relationship; (2) that in the context of that relationship, defendants negligently or intentionally failed to act in good faith in the plaintiff's interest, or instead acted for their own benefit; which (3) caused her to suffer an injury. *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 88 (Pa. 2023); *see also Young v. Kaye*, 279 A.2d 759, 763 (Pa. 1971). A.J. argues that "Mastery breached its fiduciary duty to [her] through their improper and coercive investigation, by subjecting [her] to a discussion of her rape in front of her rapist [and] his father, by sharing the video of her rape, and by punishing her for being raped." Appellant's Br. 41.

A.J.'s claim cannot succeed because the record does not support a finding that Defendants acted in bad faith or for their own benefit. Defendants responded promptly to the incident and involved the police and the students' guardians. They conducted an open investigation and did not interfere with A.J.'s grandmother's ability to press charges (which she considered and declined to do). There is no evidence that suggests Defendants "use[d] their] position to [A.J.]'s detriment and [their] own advantage." *Young*, 279 A.2d at 763. So no reasonable jury could find A.J. established the second element of this claim.

### C.

A.J. also challenges two discovery orders: (1) a December 2021 order partially denying A.J.'s October 2021 motion to compel production of documents, and (2) a

September 2022 order denying A.J.'s January 2022 motion compel and for sanctions. We apply an abuse of discretion standard when we review district court rulings on motions to compel discovery, *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 354 (3d Cir. 2003), and motions for sanctions, *Naviant Mktg. Sols., Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 185 (3d Cir. 2003). We have recognized that "[t]he substantial discretion granted to trial courts on discovery motions should not be lightly disturbed." *Stich v. United States*, 730 F.2d 115, 118 (3d Cir. 1984) (citation omitted). Thus, to demonstrate an abuse of discretion, the appellant "must show that no reasonable person could concur in the trial court's assessment of the issue under consideration." *Id.* (citation and internal quotation marks omitted).

### 1.

In its December 2021 order, the District Court denied in part A.J.'s request for incident reports from 2008 to 2016 for all Mastery schools. It reasoned that this request was not proportional to the needs of this case because A.J.'s claims concern conduct only at a single school that became part of the Mastery network in 2013. The Court therefore ordered Defendants to produce all documents related to incidents of sexual misconduct at the School between January 1, 2013 and June 30, 2016.[3]

In general, "the proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." 10A Fed. Proc., L. Ed. § 26:728 (2023).

---

[3] In the same order, the District Court denied A.J.'s request for personnel files of Defendants Gordon, Meserve, Langston, and Patron. On appeal, A.J. does not challenge that aspect of the order.

A.J. has cited no authority (nor are we aware of any) that suggests school officials' liability for an incident of student-on-student harm can turn on the history of misconduct at other schools. The District Court's limitation on A.J.'s request was well within its broad discretion.

**2.**

In January 2022, A.J. again moved to compel discovery, this time arguing that Defendants did not fully comply with the December 2021 order. She sought production of additional documents and sanctions. The District Court denied A.J.'s motion in September 2022.

In its detailed order, the Court addressed A.J.'s specific arguments regarding alleged insufficiencies and discrepancies in Defendants' production of documents. Its explanation demonstrates that it considered the possibility of both intentional and inadvertent nondisclosure, and ultimately credited Defendants' response that that they produced everything in their possession. The District Court did not abuse its discretion in denying A.J.'s motion.

**IV.**

For the reasons discussed above, we will affirm.